Steven E. SILVERMAN, Administrator of the Estate of Eric Tiebauer, Deceased, Plaintiff-Appellant,

v.

Donald BALLANTINE, Harvey Greenway, Charles Smith, J. Schlee, Irv Pogofsky and Mike Abramovitz, Defendants-Appellees.

No. 82–1600.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1982.

Decided Dec. 8, 1982.

Kenneth H. Brown, Silberman, Silberman & Brown, Chicago, Ill., for plaintiff-appellant.

Wayne B. Giampietro, DeJong, Poltrock & Giampietro, Elizabeth J. Cohen, Asst. State Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and BAUER and ESCHBACH, Circuit Judges.

CUMMINGS, Chief Judge.

Plaintiff Steven E. Silverman filed this action for damages on behalf of the estate of Eric Tiebauer, pursuant to 42 U.S.C. § 1983 and the Illinois Wrongful Death Act, Ill.Rev.Stat., 1979, ch. 70, § 1. Named as defendants are two officers of the Rolling Meadows Police Department, Donald Ballantine and Harvey Greenway, and two Cook County Deputy Sheriffs, Mike Abramovitz and Irv Pogofsky.[1] The claims arise out of the events of March 9, 1978, when the defendants attempted to serve a writ of replevin on behalf of the Hewlett-Packard Company on Tiebauer. During the service of the writ and ensuing events, Tiebauer suffered a heart attack and died. In August 1981 and March 1982 the district court granted defendants' motions for summary judgment on both claims. (A–1—A–15; A–16—A–25). We affirm.

I

The basic facts are as follows: Tiebauer, president of Computer Marketing Services, Inc., had purchased computer equipment from Hewlett-Packard on credit. When he failed to make timely payments, Hewlett-Packard obtained a writ of replevin in accordance with Ill.Rev.Stat., 1979, ch. 119, §§ 1–28. The writ was issued by the Circuit Court of Cook County upon the posting of the appropriate bond and was served by two Cook County deputy sheriffs, defendants Abramovitz and Pogofsky.

On March 9, 1978, the two deputies met John Chell, a representative of Hewlett-Packard, who had assembled a team of technicians to dismantle and remove the computer equipment. Hewlett-Packard had also contacted the Rolling Meadows Police Department to assist in the service of the writ because the firm anticipated trouble from Tiebauer. Defendants Ballantine and Greenway came from the Rolling Meadows Police Department.

The four defendants, along with Chell, went to Computer Marketing Services, Inc., entered an ante-room, and approached a reception window. Deputy Abramovitz, who was in the lead, identified himself to a man behind the window and informed him he was looking for Eric Tiebauer. The man behind the window (who was in reality Eric Tiebauer) falsely stated to the officer that Tiebauer was not present and that he was a computer programmer named Kingsley.

Abramovitz then informed "Mr. Kingsley" that it did not matter whether Tiebauer was there or not, and that he had a replevin writ to serve which called for it to be obeyed by any employee of the company. Abramovitz then handed Tiebauer the writ and informed him that he was required to turn over the equipment pursuant to the court order, and that if he did not cooperate he would be in violation of state law. Tiebauer became irate and profane and turned and retreated to his inner office.

The deputies then reached through the receptionist's window and unlocked the door

---

1. Officers Joseph Schlee and Charles Smith of the Rolling Meadows Police Department originally were also named as defendants in this action. Plaintiff stipulated before the district court that he would voluntarily dismiss his claims against these defendants prior to trial.

However, in view of the disposition by the district court of the motion for summary judgment on the federal claim, summary judgment was granted in favor of Smith and Schlee as well in August, 1981. A–2, n. 1.

leading to the inner offices of the company. They followed Tiebauer to his office and found him standing behind his desk. Abramovitz again informed Tiebauer that they were there to serve a writ of replevin and to obtain the equipment. He also informed him of the substance of the Illinois statute on obstructing service of process and further alerted Tiebauer to his right to post a bond to keep custody of the computer. Tiebauer was told that if he did not allow them to take the equipment he would have to be placed under arrest.

All four defendants testified that Tiebauer initially asked to call his attorney, picked up the telephone receiver, started to dial the number and then stopped abruptly on his own. In contrast, plaintiff's witnesses, who were outside the office, testified that Tiebauer's request to call his attorney was denied. Tiebauer again informed defendants, profanely, that he would never permit the taking of the computer. Abramovitz therefore placed Tiebauer under arrest and directed Officers Ballantine and Greenway to seize him. All four men stated that Tiebauer made a sudden move toward his top desk drawer. Ballantine and Greenway each attempted to take one of Tiebauer's arms, but he weighed 410 pounds and easily flung them aside. The second time the detectives tried to grab Tiebauer he fell back on top of Ballantine, injuring him. Greenway then requested assistance from Pogofsky in handcuffing Tiebauer and in rolling him off Ballantine. They handcuffed Tiebauer and Ballantine left the room injured. As he left, two other Rolling Meadows police officers, Schlee and Pletz, who had been called prior to the scuffle by Ballantine, arrived at the scene.

In the midst of this confusion, Greenway noticed that Tiebauer was having a heart attack while lying on the floor, handcuffed. One of plaintiff's decedent's employees, Judy Sheridan, entered the room and attempted to loosen Tiebauer's tie. The handcuffs were removed and calls for paramedical assistance were made. Officer Pletz attempted to give Tiebauer cardiopulmonary resuscitation. The paramedics arrived between three and ten minutes af-ter they had received requests for assistance from the officers.

The medical examiner concluded that Tiebauer died as a result of a massive coronary attack, and he found no evidence of physical injuries from a violent attack on Tiebauer's body.

II

Plaintiff raises four Section 1983 claims: (1) the officers' entry into Tiebauer's inner office was unlawful, (2) Tiebauer's detention was unlawful, (3) excessive force was used in arresting Tiebauer, and (4) Tiebauer failed to receive appropriate medical attention from the officers. Plaintiff argues first that disputed issues of material fact made summary judgment inappropriate, and second, that the district court erred as a matter of law in granting summary judgment for defendants.

Summary judgment is of course appropriate only on a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Each of plaintiff's claims must be evaluated in accordance with this standard.

A. *The unlawful entry claim*

Plaintiff first argues that summary judgment was inappropriate because the evidence presented conflicting versions of what actually happened in Tiebauer's outer office. While plaintiff's witnesses contend that they heard only "murmuring" coming from the outer office, all four defendants and John Chell claim Tiebauer was irate and profane.

By their own admission, however, plaintiff's witnesses were not at the scene. Judy Sheridan, an employee, testified that she overheard Tiebauer say that "Eric wasn't there," and "[t]hat's all I heard at the time." She left soon afterwards (Sheridan Dep. 14–15). Lester Schneider, a consultant, testified that he was in an office next to Tiebauer's inner office and was busy working, but heard some "murmuring" coming from the outer office (Schneider

Dep. 11). Because plaintiff's witnesses were not present in the outer office, their version of the events cannot be characterized as inconsistent with that of defendants' witnesses.

Plaintiff next argues that the evidence presented conflicting versions of defendants' reasons for entering the locked inner office area. Plaintiff's position is that entry was made to force Tiebauer's cooperation in violation of the Fourth Amendment, though the district court found the defendants entered to effectuate an arrest because they reasonably believed a misdemeanor had been committed in their presence. All four defendants and John Chell indicated that Tiebauer was informed at the window that if he did not cooperate he would be arrested, that Tiebauer turned and walked away, and that the entry was made immediately thereafter. All but Deputy Pogofsky explicitly stated that Abramovitz informed Tiebauer at the window that he was under arrest (Ballantine Dep. 26–27; Greenway Dep. 20; Chell Dep. 46, 48; Abramovitz Dep. 38 and Ex. 6; Pogofsky Dep. 36–37).

Once the arrest had been announced, defendants entered the office to effectuate it. There is no evidence in the record to indicate that defendants were not acting pursuant to the belief that a misdemeanor had been committed.[2]

Plaintiff also challenges the district court's conclusion that the entry into the inner offices of Computer Marketing Services, Inc. was justified as a matter of law.[3] The undisputed facts show that after the four defendants and Chell entered the anteroom and approached Tiebauer from outside the windowed partition, Deputy Abramovitz, who was in the lead, identified himself and explained the obligation of an employee to obey the replevin writ. He told Tiebauer that if he didn't cooperate he would be in violation of state law. According to those present, Tiebauer responded in a threatening manner. (See Greenway Dep. 20: Tiebauer said "that he wasn't going to help us any way whatsoever" and " 'Go fuck yourself, you are not taking anything' "; Ballantine Dep. 25–26: Tiebauer said "we [de-

**2.** Plaintiff argues (Br. 21–22) that Officer Ballantine's testimony that Deputy Abramovitz instructed him to arrest Tiebauer conflicts with Abramovitz' testimony that he did not tell Ballantine anything. However, both agree that Abramovitz told Tiebauer in Ballantine's presence that Tiebauer was under arrest. Whether Abramovitz told Ballantine directly or not is immaterial, as long as Ballantine was aware of the fact that Tiebauer was under arrest.

Plaintiff argues that Deputy Pogofsky's stated reason for entry was not to effectuate an arrest, but "to talk to Tiebauer about surrendering the equipment" (Br. 22). However, Pogofsky's full response to a question asking his reason for going into the office was: "*To get him,* to talk to him about surrendering the equipment" (Pogofsky Dep. 41) (emphasis added). Such a response indicates an intent to effectuate an arrest. Plaintiff also claims that Deputy Abramovitz could not have believed Tiebauer committed a misdemeanor under Ill. Rev.Stat., 1979, ch. 38, § 31–3 because Abramovitz testified that there was no obstruction of service of process in this case. His full response to the question "What is your understanding of when an individual is obstructing service of process?" was as follows:

I didn't go to Court, I haven't got a Court date yet and I don't want to surrender it, he owes me money, I don't want to surrender anything. There is all kinds of stories. And I explain to them this is a writ, a Court

Order, judge commands the sheriff to take the property in his custody and refusing that is obstructing the justice. * * * That did not happen in this case. But, I mean, generally this is—Can I talk to you, counsel, for a minute. (Abramovitz Dep. 79–80.)

Tiebauer's statements fit squarely into Abramovitz' definition of obstruction of process—"I don't want to surrender it, . . . I don't want to surrender anything." Consequently, the evidence indicates that Abramovitz did believe that Tiebauer committed a misdemeanor before the entry was made.

Finally, plaintiff argues that Chell testified that during the time defendants were in Tiebauer's office there was no talk of arrest until Tiebauer attempted to leave (Dep. 58). However, Chell also testified that an arrest was made at the window (Dep. 48). The events in the inner office are immaterial to determining whether the original entry was legal.

**3.** Plaintiff argues that this case is governed by *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 in which the Supreme Court held that a warrantless, non-exigent entry into a private residence was improper, even though based on probable cause. As plaintiff admits, this case involves a private office rather than a home and defendants were legally there to serve a writ as shown *infra.*

fendants] all better get the fuck out of his office" and "the sheriff asked him at that time is he refusing to accept the writ; he said, 'You are fucking right I am, just get the hell out of my office before you get hurt.'"; Pogofsky Dep. 33–34: Tiebauer said "'I'm not giving you any of that equipment, none of you son of a bitches are going to get it, there aren't enough of you to take the thing.'"; Abramovitz Dep. 35–36: Tiebauer said "'Go fuck yourself, nobody is going to take any of this equipment here'"; Chell Dep. 46: Tiebauer said "'No fucken way' or 'Get the hell out of here.'")[4] Deputy Abramovitz told Tiebauer that if he didn't cooperate he would be arrested for violating Ill.Rev.Stat., 1979, ch. 38, § 31–3, which provides:

> Whoever knowingly resists or obstructs the authorized service or execution of any civil or criminal process or order of any court commits a Class B misdemeanor.

Tiebauer turned and walked away from the window.

 Illinois law provides that a peace officer may arrest a person when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense." Ill.Rev.Stat., 1979, ch. 38, § 107–2. Although obstructing service or execution of process under the statute cannot be premised on "mere argument" with a police officer, it may be premised on a "physical act which ... may impede, hinder, interrupt, prevent or delay the performance of the officer's duties ...." *Landry v. Daley,* 280 F.Supp. 938, 959 (N.D.Ill.1968) (interpreting Ill.Rev.Stat., ch. 38, § 31–1, Resisting or Obstructing a Peace Officer), reversed on other grounds *sub nom. Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696. See also *People v. Raby,* 40 Ill.2d 392, 399, 240 N.E.2d 595 (1968); *Migliore v. County of Winnebago,* 24 Ill.App.3d 799, 802–803, 321 N.E.2d 476 (2d Dist.1974). When Mr. Tiebauer, a 400-pound man, told the officers in no uncertain terms that he would not allow them to take the equipment and retreated from the window, he "impeded, hindered, interrupted or delayed" the repossession of the equipment.[5] In this case, the officers had reasonable grounds to believe Mr. Tiebauer was committing a misdemeanor in their presence, and they therefore had probable cause to enter the inner offices to effectuate an arrest.[6]

### B. The unlawful detention claim

Plaintiff argues that summary judgment was inappropriate on the unlawful deten-

---

**4.** It should be restated at this point that Mr. Tiebauer was 6 feet tall and weighed 410 pounds. A–4.

**5.** Plaintiff argues that defendants "knew that the equipment was located in a building behind the corporation's offices" and could have ignored Tiebauer's "noncooperation" and "proceeded to the computer room and taken the equipment." Br. 19. The evidence in the record indicates, however, that defendants did not know where the equipment was or that there was more than one building at the address on the writ. (See Abramovitz Dep. 23: "Q: ... did you know what part of the building it was located? A: No, sir, did not."; Greenway Dep. 16: "Q: Did they indicate at all where the equipment was located? A: Just at this 5050 Newport Drive."; Ballantine Dep. 15: "Q: Was there any discussion about where the property was located? A: I believe in the warehouse I think they said."; Pogofsky Dep. 29: "Q: Do you know where the vans from Hewlett-Packard were parked? A: No. Around the back, I guess there is a dock area, they went around the back of the building. Q: Do you know why they went to the dock area? A: I presume to remove the machinery. Couldn't be taken out

with the type of things on here, or they couldn't leave their trucks in the parking lot, one or the other.") Chell testified that, although he knew the equipment was in another building, Dep. 41, he did not mention it to the deputies, Dep. 36, and had no preliminary conversation with the Rolling Meadows police officers, Dep. 39.

**6.** Plaintiff argues that under Illinois law, Tiebauer had no affirmative duty to assist the deputies in executing the replevin writ. *Universal Credit Co. v. Antonsen,* 374 Ill. 194, 29 N.E.2d 96 (1940); *Jim's Furniture Mart, Inc. v. Harris,* 42 Ill.App.3d 488, 1 Ill.Dec. 175, 356 N.E.2d 175 (4th Dist.1976). The Illinois Replevin Act specifically provides that if the deputies cannot locate the property, they simply return the writ "no property found." Ill.Rev. Stat., 1979, ch. 119, § 18. The replevin plaintiff, in this case Hewlett-Packard, then is meant to bring a suit against the possessor of the property in trover. *Id.*

The fact that Tiebauer has no affirmative duty to assist the deputies of course does not mean that Tiebauer can obstruct them in executing the writ.

tion claim because the evidence presented conflicting versions of what actually happened in Tiebauer's inner office. There is indeed a dispute about whether Tiebauer was permitted to call his lawyer after the defendants entered his office.[7] However, even if the testimony of plaintiff's witnesses is credited, the grant of summary judgment was proper.

■■■ Defendants are entitled to a qualified immunity in a Section 1983 case unless they knew or reasonably should have known that their actions violated plaintiff's constitutional rights. *Harlow v. Fitzgerald,* — U.S. —, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Plaintiff claims that by refusing to let Tiebauer call his lawyer, defendants violated his Sixth Amendment right to counsel. Yet it is established law that the right to counsel attaches at the time that adversary judicial proceedings are initiated against a suspect, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424, quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411. The right applies to all "critical stages" in the prosecution, *Kirby v. Illinois,* 406 U.S. at 690, 92 S.Ct. at 1882. As discussed above, defendants were justifiably present in Tiebauer's office to effectuate an arrest. While it is unclear whether an arrest can be considered the beginning of "adverse judicial proceedings," (see *United States ex rel. Sanders v. Rowe,* 460 F.Supp. 1128, 1138 n. 28 and cases cited therein; cf. *Brewer v. Williams,* 430 U.S. 387, 410, 97 S.Ct. 1232, 1245, 51 L.Ed.2d 424 (Powell, J., concurring) (defendant was "arrested, booked, and carefully given *Miranda*

warnings. It is settled constitutional doctrine that he *then* had the right to assistance of counsel.") (emphasis added)), such uncertainty need not detain us. We hold that defendants retain their qualified immunity because they could not reasonably have known that Tiebauer had a right to counsel at the time of his arrest.[8]

## C. The use of excessive force in effectuating the arrest

Illinois law provides that

a peace officer, or any person whom he has summoned or directed to assist him ... is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm, while making the arrest. Ill.Rev.Stat., 1979, ch. 38, § 7–5(a).

■ Plaintiff has presented no evidence that defendants used excessive force in effectuating Tiebauer's arrest. First, the officers' actions in reaching through the receptionist's window to enter Tiebauer's office was the minimum amount of force possible under the circumstances. Second, once inside the office, the only direct evidence comes from the defendants themselves, who testified that Tiebauer did not submit quietly to the arrest.[9] When the Rolling Meadows police officers first grabbed Tiebauer's arms in an attempt to handcuff him, Tiebauer flung them off. They then subdued him and managed to handcuff him. As the district court said, "the force used on Tiebauer was in the context of a 410 pound man angrily, actively and violently resisting arrest." A–12. Under these circumstances, and in light of the absence of conflicting evidence, we

7. Plaintiff also argues that one of the defendants entered the office with his gun "drawn," thus making the detention illegal. Defendants deny this. Plaintiff bases his claim on the testimony of Lester Schneider who said he saw a gun "drawn almost entirely out of his pocket except for the tip of the barrel. * * * Q: ... was he pointing this gun at anyone? A: No. I said the barrel was in his pocket. The tip of the barrel was in his pocket." Dep. 13. This "disputed" issue of fact, if indeed it is one, is immaterial to the theory of the complaint.

8. It should be noted that this case does not involve an interrogation which produced a confession later sought to be introduced as evidence·of guilt in violation of the defendant's Fifth Amendment rights. See *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 as interpreted in *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

9. Plaintiff's witnesses admitted that they did not see any "scuffle" (Schneider Dep. 28; Sheridan Dep. 31).

must affirm the grant of summary judgment for the defendants on this claim.

### D. The denial of appropriate medical treatment

We concur generally with the district court's discussion of this claim as reproduced below (A–12—A–13):

The legal standard governing plaintiff's third claim—denial of appropriate medical treatment—was discussed by the Seventh Circuit in *Wood v. Worachek,* 618 F.2d 1225 (7th Cir.1980). In *Worachek,* another § 1983 case involving claims of inadequate medical attention, the court analogized from the Supreme Court's decision in *Estelle v. Gamble,* 429 U.S. 97 [97 S.Ct. 285, 50 L.Ed.2d 251] (1976), and held that the mere inadvertent failure to provide adequate medical care was insufficient to serve as a basis for a compensable deprivation of civil rights. Rather, the *Worachek* court indicated that proof of 'deliberate indifference' to plaintiff's medical needs under the circumstances is necessary to complete the violation. *Wood v. Worachek,* 618 F.2d at 1233. *Cf. Lock v. Jenkins,* 641 F.2d 488, 491 n. 7 (7th Cir.1981).

A review of the available evidence illustrates that plaintiff's medical attention claim is the most plausible of those raised in this case. Even here, however, the evidence falls far short of proof of deliberate indifference to Tiebauer's medical needs. Indeed, the evidence does not establish any misfeasance at all on the part of the defendants. Both Ballantine and Greenway testified at their depositions that paramedical assistance was requested almost immediately upon the recognition that Tiebauer was in need of help [(Ballantine Dep. 64; Greenway Dep. 58, 59)]. Ballantine called an ambulance by telephone, and Officer Schlee requested assistance on his police radio [(Ballantine Dep. 64)]. * * *

The evidence also indicates that Officer Pletz administered cardio-pulmonary resuscitation to Tiebauer (Greenway Dep. 60, 61; Pogofsky Dep. 57; Abramovitz Dep. 58).

This was confirmed, according to the district court, by "the report filed by the paramedics, which states that, upon their arrival, Tiebauer was receiving CPR. (Def.Ex. D)." The district court continued (A–13—A–14):

Finally, witnesses for the plaintiff and defendants testified that the ambulance team arrived on the scene as early as three minutes, and no later than 10 minutes, after they were called. Accordingly, the deposition transcripts reveal that the paramedics were attending to Tiebauer no later than 12 minutes after he had his heart attack.

In his attempt to raise a genuine issue of fact, plaintiff points to the testimony of Mike Pedersen and William Martino, both employees of Tiebauer, who stated that the police "stood around" and "did nothing." It is, however, not necessary to discredit this testimony in order to conclude that no factual issue exists. * *

█ The evidence indicates that both Pedersen and Martino arrived late on the scene, after the struggle had ended (Sheridan Dep. 53; Pedersen Dep. 12–13; Martino Dep. 12–15). Neither actually entered the office (Pedersen Dep. 15; Martino Dep. 15), and thus did not see Officer Pletz administering cardio-pulmonary resuscitation. Finally Sheridan testified that during the confusion there was some momentary delay in removing Tiebauer's handcuffs. However, she was ushered out of the room and thus could not see the handcuffs being removed (Sheridan Dep. 37). We conclude with the district court that "[a] brief delay in effecting medical care during a time of great confusion does not rise to the level of a constitutional tort under the *Wood v. Worachek [supra]* standard."

### III

Plaintiff also brings suit under the Illinois Wrongful Death Act, which creates a cause of action for death caused by "wrongful act, neglect or default." Ill.Rev.Stat., 1979, ch. 70, § 1. Because the suit is against public employees, the district court

held that their liability is limited by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, Ill. Rev.Stat., 1979, ch. 85, §§ 1–101 *et seq.* The Act limits liability to acts or omissions which constitute "willful and wanton negligence." *Id.* § 2–202. Plaintiff now argues for the first time on appeal that the statutory immunity defense was waived to the extent defendants were covered by insurance. *Id.* § 9–103(c).

 We need not address this contention. Regardless of the statutory immunity provided in the Tort Immunity Act, plaintiff cannot prevail on the wrongful death claim. To prevail on such a claim, plaintiff must prove "facts showing a duty of defendant and a breach of that duty which was a proximate cause of an injury to plaintiff." *Hubbard v. Aetna Ins. Co.*, 37 Ill. App.3d 666, 669, 347 N.E.2d 396, 399 (1st Dist.2d Div.1976). Yet defendants breached no duty; in fact, as discussed in Part II *supra,* defendants at all times acted reasonably and within the bounds of the law. The entry into Tiebauer's office was justified because the officers reasonably believed that a misdemeanor was committed in their presence, and they entered the office to effectuate an arrest for that misdemeanor. Defendants' brief detention of Tiebauer was also reasonable in light of the current state of Sixth Amendment law. Defendants did not use excessive force in effectuating the arrest of Mr. Tiebauer, and as justifiably stated by the district court, the evidence with respect to the medical mistreatment claim "does not establish any misfeasance at all on the part of the defendants." See *supra* p. 1097.

The summary judgments on both claims are affirmed.