Richard MAZANEC, Barbara Mazanec, Patricia Mazanec, Susan Mazanec, and Angela Mazanec and the Greenhouse Academy, Inc., a Not-For-Profit Corporation, Plaintiffs,

v.

NORTH JUDSON–SAN PIERRE SCHOOL CORPORATION, James F. Moore, Superintendent, North Judson-San Pierre Schools, David M. Geisler, Prosecuting Attorney for the 44th Judicial Circuit of the State of Indiana, and Marilyn V. Mabry, State Attendance Officer for the State of Indiana, Each of Whom is Sued Individually and in His/Her Official Capacity, Defendants.

Civ. No. S 81–0219.

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 14, 1982.

Edward McBlynee Gaffney, Jr., Associate Professor of Law, Notre Dame, Ind., Charles E. Rice, Professor of Law, Notre Dame, Ind., for plaintiffs.

Linley E. Pearson, Atty. Gen., Indianapolis, Ind., B. Patrick Maloy, Knox, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case is an action brought by private parties against the North Judson-San Pierre School Corporation and various public officials. In addition to compensatory and punitive damages, plaintiffs seek both declaratory and injunctive relief as well as costs and attorney fees. The plaintiffs are Richard and Barbara Mazanec, parents of Patricia, Susan and Angela Mazanec, and the Greenhouse Academy, a not-for-profit school incorporated by Richard and Barbara Mazanec under the laws of the State of Indiana. The defendants are the North Judson-San Pierre School Corporation; its Superintendent, James F. Moore; David M. Geisler, Prosecuting Attorney for the 44th Judicial Circuit of the State of Indiana; and Marilyn V. Mabry, Indiana State Attendance Officer. The above named defendants are being sued in both their individual and official capacities. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343(1)–(4), and the cause of action is alleged to arise under 42 U.S.C. § 1983 as well as the First and Fourteenth Amendments to the United States Constitution. This case is presently before the Court on defendants motions to dismiss or, in the alternative, for summary judgment. Construing the facts in a light most favorable to the non-movant plaintiffs reveals the following.

Barbara Mazanec is a Jehovah's Witness. Because of sincerely held religious beliefs, she and her husband, Richard, founded the

Greenhouse Academy in 1979 and enrolled their three children therein rather than send them to the North Judson-San Pierre public schools. The Greenhouse Academy supplements State mandated curricula with religious and moral instruction. Barbara Mazanec is the Academy's principal.

On August 29, 1980, defendant Moore sent a letter to the plaintiffs, informing them that the North Judson-San Pierre public schools had begun classes on August 25, 1980, and that the children of Richard and Barbara Mazanec were not enrolled among the students attending the above-named public schools. Defendant Moore advised the plaintiffs that they had ten days from the date of the receipt of his letter in which to enroll the children in the North Judson-San Pierre public schools or to provide him with evidence that the children were otherwise enrolled in a school complying with the requirements set forth at I.C. 20–8.1–3–17.

On September 10, 1980, plaintiffs sent a letter to defendant Moore explaining that their children would be enrolled later that month in a school complying with the above statute (the Greenhouse Academy operates on an academic calendar year beginning approximately five weeks later than the public school's calendar), and offered to provide him with further information during the next 20 days.

Nonetheless, and notwithstanding this response, defendant Moore signed an affidavit in support of a criminal information on September 22, 1980, declaring that the plaintiffs had unlawfully permitted their children to be absent from the North Judson-San Pierre public schools. On that date, defendant Geisler filed a criminal action in state court against the plaintiffs, Richard and Barbara Mazanec, alleging a violation of the state's compulsory school attendance law, a Class B misdemeanor.

On March 30, 1981, defendant Mabry acknowledged the fact that plaintiffs were "in compliance with the law" in a letter sent to the Mazanecs. Even so, the criminal action pending against the plaintiffs in state court was not dismissed until Septem-ber 25, 1981, more than 11 months after the plaintiffs first filed said motion. Although no criminal action is presently pending in state court against the plaintiffs, defendant Geisler has allegedly threatened future prosecution against them.

Plaintiffs allege, *inter alia,* that their First Amendment rights to freedom of religion, speech, and association in educational endeavors have been violated by the defendants acting or failing to act under color of state law, thereby constituting a denial of due process of law; that the plaintiffs have been subjected to selective prosecution resulting in a denial of due process of law; that the plaintiffs have been subject to selective prosecution resulting in a denial of equal protection of the laws; and that the actions of the defendants have injured not only the plaintiffs' reputations, but have caused them physical and emotional distress as well.

The defendants argue in support of their motions to dismiss or for summary judgment that this Court lacks both *in personam* jurisdiction over the defendants as well as subject matter jurisdiction, and that the plaintiffs' amended complaint fails to state a claim upon which relief can be granted. Defendants contend that the only genuine issues appearing before this Court are (1) whether the plaintiffs were in compliance with I.C. 20–8.1–3–1 *et seq.* on September 22, 1980, and (2) whether the plaintiffs were in compliance with I.C. 20–8.1–3–17 and I.C. 20–8.1–3–34 after September 29, 1980. Thus, defendants maintain that this case turns on the sole question of whether there has been compliance with Indiana law. In addition, the defendants argue that a qualified immunity exists for the defendants because of their allegedly good faith actions in this matter.

Because defendants Geisler and Mabry have framed their Motion to Dismiss in the alternative to include a Motion for Summary Judgment, and defendants Moore and North Judson-San Pierre School Corporation have supported their Motion to Dismiss with the affidavit of defendant Moore, the motions to dismiss of all defendants are

hereby converted to a motion for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

In order for defendants to prevail on their motions for summary judgment, a careful review of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.

■ Defendants Moore and North Judson-San Pierre School Corporation argue that a school corporation is not a "person" within the meaning of 42 U.S.C. § 1983, citing *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) in support thereof. This Court directs defendants' attention to *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), wherein the Supreme Court expressly overruled *Monroe v. Pape, supra,* in holding that municipalities and other local governing bodies are "persons" within the meaning of § 1983. 436 U.S. at 690, 98 S.Ct. at 2035–2036. Subsequent decisions of other Courts have expressly declared school districts and their governing boards to be subject to actions filed under 42 U.S.C. § 1983. See, *e.g., Kingsville Independent School District v. Cooper,* 611 F.2d 1109 (5th Cir.1980); *Stoddard v. School District No. 1, Lincoln County, Wyoming,* 590 F.2d 829 (10th Cir.1979).

■ Defendant Moore also argues that he acted at all times in good faith in the performance of his duties. However, such a matter is clearly a question of fact, not law. The pleadings reveal that Barbara Mazanec informed defendant Moore by letter dated September 10, 1980, that her children were to be enrolled in a school whose academic calendar began the last week in September. Since the law presumes a letter, properly addressed and mailed, to have been received by the addressee, a question of fact regarding defendant Moore's good faith is raised by his having filed an affidavit on September 22, 1980 in support of defendant Geis-

ler's information charting the Mazanec parents with a violation of Indiana's compulsory school attendance law.

Nothing in I.C. 20–8.1–3–1 *et seq.* supports defendants' arguments that the children were to have been in school on September 22, 1980. I.C. 20–8.1–3–17, cited by defendants in support of their position, reads in its entirety:

20–8.1–3–17 [28–5321]. Compulsory attendance.—Subject to the specific exceptions under this chapter, each child shall attend either a public school which the child is entitled to attend under IC 20–8.1–6.1 [20–8.1–6.1–1—20–8.1–6.1–11] or some other school which is taught in the English language and which is open to inspection by the state attendance officer, local attendance officers, and school officials. A child is bound by the requirements of this chapter from the earlier of the date on which he officially enrolls in a school or he reaches the age of seven [7], until the date on which he reaches the age of sixteen [16]. A child less than seven [7] years of age who is withdrawn from school is not subject to the requirements of this chapter until he is re-enrolled or reaches age seven [7]. A child for whom education is compulsory under this section shall attend school each year (1) for the number of days public schools are in session in the school corporation in which the child is enrolled in Indiana; or (2) if the child is enrolled outside Indiana, for the number of days the public schools are in session where the child is enrolled.

Further I.C. 20–8.1–3–34 also states:

20–8.1–3–34 [28–5338]. Compulsory attendance for full term—Duty of parent.—It is unlawful for a parent to fail, neglect or refuse to send his child to a public school for the full term as required under this chapter unless the child is being provided with instruction equivalent to that given in the public schools. This section does not apply during any period when the child is excused from attendance under this chapter.

Thus, a careful reading of the Indiana Compulsory School Attendance statute reveals that the children enrolled in "some other school" are required to be in attendance "for the full term," i.e., a specified *number* of days. No particular dates are set forth anywhere in the statute. Further, Barbara Mazanec so informed Mr. Moore by letter of September 29, 1980, that "[t]he school will be in session the same number of days as the public schools."

Defendant Mabry argues that she acted at all times in good faith, and only learned of the criminal action pending against the Mazanecs in state court several months after its inception. However, I.C. 20–8.1–3–16 states that "The state attendance officer shall investigate the manner in which this chapter [20–8.1–2–1—20–8.1–3–37] is being enforced." There is nothing in the record to show that Ms. Mabry took any action to halt the criminal prosecution after the date on which she sent a letter to Barbara Mazanec confirming that the plaintiffs were in compliance with state law (March 30, 1981) and before the date on which the criminal prosecution was finally dismissed (September 25, 1981). Therefore, a genuine issue of material fact exists as to the good faith of defendant Mabry.

Defendant Geisler argues that plaintiffs failed to adhere to the procedural dictates of the Indiana Tort Claims Act, I.C. 34–4–16.5–1 *et seq.,* and therefore the state tort pendant claims should be dismissed as to him. Nonetheless, defendant Geisler concedes that "[t]he exercise of pendant jurisdiction is discretionary with this Court." Further, defendant Geisler contends that, as a prosecutor, he is immune from liability because his actions were prosecutorial in nature.

■ Prosecutors are absolutely immune from liability for actions taken in initiating and presenting the State's case. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); *Briscoe v. LaHue,* 663 F.2d 713 (7th Cir.1981); *Henderson v. Fisher,* 631 F.2d 1115 (3d Cir. 1980). However, absolute immunity will not bar equitable relief sought against a prosecutor, *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Tartar v. Hury,* 646 F.2d 1010 (5th Cir.1981), particularly where he is threatening future prosecution. 446 U.S. at 734–37, 100 S.Ct. at 1975–1977. Defendant Geisler contends that he "has no intention of bringing charges against these plaintiffs". Plaintiffs allege that defendant Geisler has in fact threatened such future prosecution.

■ Based on the Supreme Court's holdings in *Imbler v. Pachtman* and *Supreme Court of Virginia v. Consumers Union, supra,* as well *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (suits against state officials in federal courts not barred by the Eleventh Amendment under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)), this Court concludes that plaintiffs' tort claims seeking damages against defendant Geisler cannot be construed as falling outside his prosecutorial role. Therefore, defendant Geisler is immune from that portion of plaintiffs' action seeking to recover money damages for malicious prosecution.

Nonetheless, because a genuine issue of material fact exists as to whether defendant Geisler has threatened future prosecutions against these plaintiffs, this Court shall retain jurisdiction over those equitable claims set forth in plaintiffs' complaint seeking declaratory and injunctive relief.

For the reasons stated above, those claims seeking money damages against defendant Geisler are hereby DISMISSED. As to all other matters, defendants' motions for summary judgment are DENIED. SO ORDERED.