Richard MAZANEC, Barbara Mazanec, Patricia Mazanec, Susan Mazanec, Angela Mazanec, and the Greenhouse Academy, a not-for-profit corporation, Plaintiffs,

v.

NORTH JUDSON–SAN PIERRE SCHOOL CORPORATION, James F. Moore, Superintendent of North Judson-San Pierre School Corporation, Steven J. Moerlein, Prosecuting Attorney for the 44th Judicial Circuit of the State of Indiana, Marilyn Mabry, State Attendance Officer for the State of Indiana, each of whom is sued individually and in his/her official capacity, Defendants.

No. S 81–219.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 7, 1985.

Richard and Barbara Mazanec, pro se.

Richard LaSalvia, South Bend, Ind., for plaintiffs.

George B. Huff, Jr., David Michael Wallman, Deputy Attys. Gen., Indianapolis, Ind., B. Patrick Maloy, Knox, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case has now been the subject of a published opinion of this court in *Mazanec v. North Judson-San Pierre School Corporation,* 552 F.Supp. 873 (1982), and two published opinions by the United States Court of Appeals for this Circuit. *See Mazanec v. North Judson-San Pierre School Corporation,* 750 F.2d 625 (7th Cir.1984) and, most recently, on May 31, 1985, now found at 763 F.2d 845 (7th Cir.1985). It is with the mandate contained in that last opinion of the Court of Appeals that this court will now attempt to comply. In the interest of fairness and justice this court again held oral argument in this case on the 19th day of July, 1985, in South Bend, Indiana and at the request of the plaintiffs agreed to entertain supplemental briefing and proposed findings in order to comply with both Rule 52 of the Federal Rules of Civil Procedure and the mandate of the Court of Appeals. This will also reflect the necessary findings and conclusions as required by Rule 52.

From the last proceedings held in this court it is readily apparent that counsel for these plaintiffs retained a very expansive view of the issues which remain in this case. Counsel for the plaintiffs took the view that the most recent opinion of the Court of Appeals written by Judge Posner decides solely the question of abstention and the remaining comments therein are

merely dicta and do not constitute the law of this case. While this court does not entertain such a restrictive view of that opinion it will in the interest of caution deal with all of the issues that are deemed to remain the proper subject of the decision of this court based on the proceedings and record in this case.

■ Plaintiff's counsel would have this court issue an injunction that is essentially advisory to all who are in positions of prosecutorial authority in the State of Indiana as to what approach should be taken in cases involving the education of school age children in the so-called home school setting. Such an effort would be wholly advisory and is not mandated by the record in this case. As the record here well illustrates, the factual patterns vary and each prosecutor must examine each case in light of the constitutional and statutory values involved. It is not for this court to use its extensive injunctive authority to issue such a manual for state prosecutors.

■ It was explicitly conceded at the last oral argument in this court that no damage claim is here made against David M. Geisler as Prosecuting Attorney of the 44th Judicial Circuit of the State of Indiana (Starke County) or his successor in office. Prosecutor Geisler and his successor in office are certainly entitled to immunity from any damage claim under the clear and explicit teaching of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and its progeny. The plaintiffs do argue that the present prosecuting attorney of the 44th Judicial Circuit of the State of Indiana remains in this case for purposes of injunctive relief which is prospective in nature. It is beyond any dispute whatsoever that any and all criminal charges that were brought against Barbara Mazanec by the prosecuting authorities of the State of Indiana which in any way relate to the subject matter of this case have either been dismissed or resolved. This record is absolutely void of any suggestion whatsoever that the present prosecuting attorney or indeed anyone with prosecutorial authority in the State of Indiana

has any intention whatsoever of prosecuting Barbara Mazanec or any of the other plaintiffs in regard to the method in which Barbara Mazanec desires and chooses to educate her children. Therefore, there remains no bases in this record for any type of prospective injunctive relief as to the prosecuting attorney who has jurisdiction in Starke County, Indiana.

## II.

The plaintiffs have conceded that any damage claim against Marilyn V. Mabry as State Attendance Officer in the Department of Public Instruction in the State of Indiana would be precluded by the Eleventh Amendment of the United States Constitution as defined in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), and most recently reaffirmed by the Supreme Court of the United States in *Kentucky v. Graham*, — U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), and *Atascadero State Hospital v. Scanlon*, — U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). For cases dealing with the Eleventh Amendment in this court see *Burr v. Duckworth*, 547 F.Supp. 192 (1982); *Elliott v. Hinds*, 573 F.Supp. 571 (1983); *Hendrix v. Indiana State Public Defender System*, 581 F.Supp. 31 (1984); *Wellman v. Trustees of Purdue University*, 581 F.Supp. 1228 (1984); and *Schott v. Helper*, 101 F.R.D. 99 (1984). *See also, Owen v. Lash*, 682 F.2d 648 (7th Cir.1982). Therefore, no damage claim may be successfully asserted, and indeed none has been proven as against the defendant, Marilyn V. Mabry, in her aforesaid official capacity. Neither is there any basis for any damage claim against Marilyn V. Mabry, even in a nominal sum, in her individual capacity.

■ Marilyn V. Mabry testified in this court and this court was greatly impressed with her credibility as a witness and her competence as a very sensitive public official. She is a member of a minority race. She appears to be aware of the rights and aspirations of other persons who represent minority thought or positions in this socie-

ty. She fulfilled her statutory obligations to the State of Indiana and dealt with Barbara Mazanec competently and in a highly sensitive manner. There is nothing in this record to indicate in any way that Marilyn V. Mabry violated the constitutional rights of any of the plaintiffs in this case. There is no manifestation of her interest to do so. It is suggested that some way or other Marilyn V. Mabry, an official in the Department of Public Instruction of the State of Indiana, had some kind of constitutional or statutory duty to instruct the prosecutors in the State of Indiana in regard to so-called truancy prosecutions that may spring from efforts at so-called home study situations. Ms. Mabry is not a lawyer nor does she pretend to be a constitutional scholar. She had no duty under the statutes of the State of Indiana to provide any legal guidance to the prosecutors of the State of Indiana on this subject. Under the Constitution[1] and statutes of the State of Indiana[2] it is not contemplated that she

1. The prosecutor is a constitutional officer in the State of Indiana under the Constitution of Indiana. Art. VII, Section 16:

Prosecuting Attorneys. There shall be elected in each judicial circuit by the voters thereof a prosecuting attorney, who shall have been admitted to the practice of law in this State before his election, who shall hold his office for four years, and whose term of office shall begin on the first day of January next succeeding his election. The election of prosecuting attorneys under this section shall be held at the time of holding the general election in the year 1974 and each four years thereafter.

Likewise education is honored in the Constitution of Indiana, Article VIII, including the creation of the office of State superintendent of public instruction in Section 8 thereof.

2. The Indiana statutes dealing with compulsory school attendance are extensive and are codified in West Annotated Indiana Code, Title 20, Sections 20–8.1–3–1 through 20–8.1–3–37. Only those sections thereof that are directly relevant here are specifically set out.

**20–8.1–3–11 Attendance officers; duties**

Sec. 11. Every attendance officer shall have the following duties:

(a) He shall serve subject to the rules, direction, and control of the superintendent in his attendance district.

(b) He shall maintain an office at a place designated by the superintendent.

(c) He shall be on duty during school hours and at such other times as the superintendent may request.

(d) He shall keep records and make reports as required by the state board of education.

(e) He shall visit the homes of children who are absent from school or who are reported to be in need of books, clothing, or parental care.

(f) When the superintendent directs or approves it, he shall bring suit to enforce any provision of this chapter which is being violated.

(g) He shall serve written notice on any parent whose child is out of school illegally.

(h) He shall visit factories where children are employed.

(i) He shall perform such other duties as are necessary for complete enforcement of this chapter.

**20–8.1–3–14 Attendance; powers of state board of education**

Sec. 14. The state board of education shall exercise general supervision by resolution over the attendance system of the state. The state board of education may adopt rules pertaining to the state attendance system and the enforcement of this chapter in accordance with IC 4–22–2. With the exception of ex officio attendance officers, the state board of education may remove any local attendance officer.

**20–8.1–3–16 State attendance officers; appointment; removal; duties; powers**

Sec. 16. State Attendance Officer: Appointment; Removal; Duties; Powers. (a) The state superintendent of public instruction shall appoint a state attendance officer. The state attendance officer shall serve at the pleasure of the state superintendent of public instruction and may be removed by him at any time.

(b) The state attendance officer shall:

(1) exercise general supervision over the attendance officers of the state;

(2) visit the various attendance districts throughout the state;

(3) inspect the work of the attendance officers; and

(4) investigate the manner in which this chapter is being enforced.

(c) The state attendance officer is empowered to initiate court actioin whenever necessary for the enforcement of this chapter.

**20–8.1–3–17 Compulsory attendance**

Sec. 17. Subject to the specific exceptions under this chapter, each child shall attend either a public school which the child is entitled to attend under IC 20–8.1–6.1 or some other school which is taught in the English language. A child is bound by the requirements of this chapter from the earlier of the date on which he officially enrolls in a school or he reaches the age of seven (7), until the date on which he reaches the age of sixteen

participate directly in the exercise of prosecutorial discretion. Under Ind.Code § 20–8.1–3–16 the state attendance officers had authority to initiate civil court actions whenever necessary for the enforcement of compulsory attendance laws. This authority continues. See Ind.Code § 4–26–3–20.1 as amended by P.L. 20–1984, Sect. 201. In any event *this* state attendance officer in no way exercised her statutory authority to initiate any court action here. The prosecuting attorneys are constitutional officers in the State of Indiana and their functions are separate and distinct from those of the Department of Public Instruction and it would be wholly inappropriate to place these kinds of burdens on administrative officials who find themselves in the position that Ms. Mabry found herself in dealing with Barbara Manazec and the other plaintiffs here. The record in this case leads clearly to the conclusion that the defendant Mabry is entitled to damage immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Barbara Mazanec phoned Ms. Mabry for information regarding the compulsory attendance act and failed to even disclose that she (Mazanec) was attempting to establish a home school. Section 1983 requires official action not official clairvoyance. Barbara Mazanec testified that Ms. Mabry "did the best she could" in this matter. Ms. Mabry gave no testimony in the state criminal cases against Mazanec.

■ It is also clear that Marilyn V. Mabry in her official capacity or in her individual capacity is in no way now threatening to or attempting to interfere with the First Amendment free exerise rights of the plaintiffs in this case. Therefore, no claims for either damage or injunctive relief are here made as against Marilyn V. Mabry individually or officially. Therefore, Marilyn V. Mabry is entitled to judgment.

### III.

■ Likewise, there is no basis for damage or injunctive relief stated in the record of this case as against North Judson-San Pierre School Corporation. The very most that they did was to approve, after the fact, the actions of its then Superintendent James F. Moore. Therefore, no basis for damage or injunctive relief is stated against the North Judson-San Pierre School Corporation. This court is well aware that the so-called good faith defense on damage issues cannot be asserted by the school

(16). A child less than seven (7) years of age who is withdrawn from school is not subject to the requirements of this chapter until he is re-enrolled or reaches age seven (7). A child for whom education is compulsory under this section shall attend school each year:

(1) for the number of days public schools are in session in the school corporation in which the child is enrolled in Indiana; or

(2) if the child is enrolled outside Indiana, for the number of days the public schools are in session where the child is enrolled.

**20–8.1–3–23 Attendance records**

Sec. 23. (a) An accurate daily record of the attendance of each child who is not less than seven (7) years of age and not more than sixteen (16) years of age shall be kept by every public and private school.

(b) In a public school, the record shall be open at all times for inspection by attendance officers, school officials, and agents of the division of labor. Every teacher shall answer fully all lawful inquiries made by an attendance officer, school official, or agent of the department of labor.

(c) In a private school, the record shall be required to be kept solely to verify the enrollment and attendance of any particular child upon request of the state superintendent of public instruction or the superintendent of the school corporation in which the private school is located.

**20–8.1–3–32 Enforcement of chapter**

Sec. 32. Enforcement of Chapter. It is the duty of each superintendent, attendance officer and state attendance official to enforce the provisions of this chapter in their respective jurisdictions and to execute the affidavits authorized under this section. This duty is several and the failure of one (1) or more to act shall not excuse any other official from his obligation to enforce this chapter. Affidavits against parents for violations of this chapter shall be prepared and filed in the same manner and under the procedure prescribed for filing affidavits for the prosecution of public offenses. Affidavits under this section shall be filed in the circuit court of the county in which the affected child resides. The prosecuting attorney shall file and prosecute actions under this section as in other criminal cases. The court shall promptly hear cases brought under this section.

corporation. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

The last defendant that must be dealt with in this record is James F. Moore. James F. Moore was under a statutory obligation to inquire into the existence of school age children located within the North Judson-San Pierre School Corporation who might not be complying with the statutes of the State of Indiana regarding mandated school attendance. This court saw and heard James F. Moore as a witness and remains convinced that he is a highly credible witness and a most competent public school administrator. He has been involved in an official capacity in other school corporations in the State of Indiana where there are significant segments of the population who choose, as they have a right to do under *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and under *Yoder v. Wisconsin*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to educate their children in facilities other than those provided in the public schools. His testimony and experience reflected the appropriate respect for those who choose another option to public education. His dealings with Barbara Mazanec were totally professional and he attempted to deal with a difficult and sensitive subject in a wholly appropriate and professional manner.

The Mazanecs withdrew their children from the North Judson-San Pierre School Corporation and enrolled them in an entity known as the Santa Fe Community School Corporation (Santa Fe) located in New Mexico. The Mazanec children and Barbara were, for a time, physically present in New Mexico working with the staff at Santa Fe to implement an acceptable home study program. Superintendent Moore received a letter from Santa Fe indicating the enrollment of the Mazanec children there and accepted same. The next school year, acting on reports that the Mazanec children were again in the school district, Moore contacted Santa Fe and was advised that these children were no longer enrolled there. He attempted to locate the children and learn about their current arrangements for their education. He was met with a Mazanec stone wall in regard to these efforts. He passed on the information to the prosecutor and signed an affidavit as to the facts then apparent. On the basis of what he knew at the time he did not violate any of the constitutional rights of any of the plaintiffs in this case by conveying the information he had then acquired to the prosecuting attorney for the 44th Judicial Circuit of the State of Indiana. The responsibility for the filing and the dismissal of the criminal charges were in the hands of the prosecuting attorney and not of Mr. Moore and the school corporation. There is no evidence in this record that James F. Moore gave to the prosecuting attorney information that was at the time inaccurate or untrue. It is correct that James F. Moore and others concerned have acquired, mostly as a result of the evidence presented in this trial, a better understanding of the posture and position taken by Barbara Mazanec in regard to the education of her children. Had she made those feelings known and had she presented the version of events that were presented in this trial to Mr. Moore at the time of his inquiries his attitude about the subject might have been entirely different. Nonetheless he simply reported those certain facts to the prosecuting authorities who then proceeded to initiate a prosecution. There is no evidence nor it is contended that James F. Moore or the school corporation had any constitutional or statutory authority over that prosecution or indeed exercise any other kinds of control over it. James F. Moore and the school corporation cannot be held responsible in damages for what happened in the course of and as a result of that prosecution.

While it is not a part of the basic tenets of the Jehovah's Witness faith to educate their children in a non-public school setting, it is most apparent that there is a basic hostility to governmental institutions and officials. A classic example of same is found in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63

S.Ct. 1178, 87 L.Ed. 1628 (1943). *See also Palmer v. Board of Education of City of Chicago,* 603 F.2d 1271 (7th Cir.1979). That anti-official syndrome is readily apparent in the dealings between Barbara Mazanec and school officials and rendered the same most difficult for both.

■ In any event the defendant Moore is clearly entitled to the immunity defense under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *See also Davis v. Scherer,* — U.S. —, 104 S.Ct. 3012, 82 S.Ct. 139 (1984); and *Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The progeny of *Harlow* in this circuit is relevant. The *Harlow* defined immunity is available to Mr. Moore and the school board members but not to the school corporation. The final en banc holding in *Egger v. Phillips,* 710 F.2d 292 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983) granted immunity to an FBI supervisor who transferred an agent in alleged violation of the latter's free speech rights. *Benson v. Scott,* 734 F.2d 1181 (7th Cir.1984) granted immunity to the Attorney General of Illinois for denying representation to a contract employee and not providing some due process review. *Johnson v. Brelje,* 701 F.2d 1201 (7th Cir.1983) granted immunity to state officials for supervising and establishing policies for a state mental institution. In *Silverman v. Ballantine,* 694 F.2d 1091 (7th Cir.1982) immunity was granted to state police officers who could not reasonably have known that an individual had a right to counsel at the time of his arrest.

## IV.

At the end of the three day trial of this case this court indicated that the fundamental issue to be resolved was the request for relief by way of declaratory judgment with reference to the free exercise rights under the First Amendment of the Constitution of the United States of those parents, guardians or custodians who desire to educate their children in a so-called home school setting.

This court was deeply impressed with the apparent character and knowledge of the oldest daughter, Patricia Mazanec, who testified in the trial of this case. This court was particularly impressed with her in regard to literary subjects.

There was also full compliance with enrollment and attendance requirements of I.C. § 20–8.1–3–17. One of the distinct pluses was the frequent and regular use made of the North Judson Public Library and its interlibrary loan facility and the extensive reading habits that sprang therefrom.

The Greenhouse curriculum was not born from thin air but was the product of educational experts at the Santa Fe Community School. The specific testimony of Edward Nagel in evaluating the quality of the Greenhouse instruction is considered highly credible here. In a more general sense the same can be said for the testimony of Dr. Raymond C. Moore.

■ This court was also impressed with much of the expert testimony offered by the plaintiff in regard to the quality of education that is possible in the home school environment. Some of that testimony approached levels of profundity. It is not for this court to make a value Judgment as to whether or not the kind of education that Barbara Mazanec provided for her children is the most desirable. It is the function of this court to decide whether that education constitutes "instruction equivalent to that given in the public schools" under Ind.Code § 20–8.1–3–34 and the record here discloses that it is. Ms. Mabry testified that she was aware of 178 home school situations in the State of Indiana and the record would infer that perhaps there might be considerably more. The plaintiffs do not challenge the facial validity of the statute of the State of Indiana here in question. Ind.Code § 20–8.1–3–34 provides in part:

It is unlawful for a parent to fail, neglect or refuse to send his child to a public school for the full term as required under this chapter unless the child is being provided with instruction equivalent to that given in the public schools.

They do not contend and did not contend in the most recent oral argument that said statute is facially invalid when examined in the light of the free exercise clause of the First Amendment of the Constitution of the United States. It is therefore unnecessary for this court to determine the constitutional validity of that statute. By its language and by the apparent manner in which it is being implemented it is not violative of those provisions of the First Amendment.

■ This court has no difficulty with the values that were announced in *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 60 years ago. Nor does this court have any difficulty in concurring with those courts that have found within the ambit of the free exercise clause a constitutional right to educate ones children in an educationally proper home environment, understanding that the State retains a legitimate interest in the fulfillment of certain minimal requirements as established legislatively and administratively as a matter of public policy. This court is aware of and concurs in the decisional line which honors the good faith efforts of parents to educate their children at home. *Minnesota v. Newstrom,* — Minn. —, 371 N.W.2d 525 (1985); *State v. Popanz,* 112 Wis.2d 166, 332 N.W.2d 750 (1983); *Roemhild v. State,* 251 Ga. 569, 308 S.E.2d 154 (1984); *Bangor Baptist Church v. State of Maine,* 576 F.Supp. 1299 (D.Maine 1983); *Delconte v. State,* 313 N.C. 384, 329 S.E.2d 636 (1985); and *Grigg v. Georgia,* 224 Va. 356, 297 S.E.2d 799 (1982).

Near the turn of this century the Appellate Court of Indiana recognized home study as an option. *State v. Peterman,* 32 Ind.App. 665, 70 N.E. 550 (1904). (It is now doubtful that the requirements of a formally licensed or certified teacher as there required would now pass constitutional muster.)

In this case this court has determined on the basis of the testimony of Mrs. Mazanec, her oldest daughter and of the experts proffered by the plaintiffs at trial that the instruction provided in the Greenhouse Academy by the plaintiff was "equivalent to that given in the public schools" as that term is defined in Ind.Code § 20–8.1–2–34.

It is not seriously contended here that the aforesaid statute runs afoul of *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). It is unnecessary to here decide whether or not these plaintiffs as members of the Jehovah's Witness stand fully in the free exercise shoes of the Amish in *Yoder.* Having made the decision on the basis of the record in this case that there is "equivalent instruction" much of the rest of this case falls by the wayside. It is therefore unnecessary to determine in this case the full parameters of "equivalent" and indeed whether the term is constitutionally vague. It is the present position of the defendant school authorities, both State and local, that equivalent education is occurring and that is the basis for their assertion on the record in this case that no further interference with the operation of the Greenhouse Academy by these plaintiffs in regard to the education of these children is contemplated.

V.

The record here has a strong flavor of mootness as defined in *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). At this point the record fails to indicate that any allegedly wrongful behavior could reasonably be expected to recur. *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). The present prosecutor has categorically indicated a total lack of intent to prosecute these plaintiffs for their present mode of operating the Greenhouse Academy. The record here simply fails to invoke the teaching of *Southern Pacific Terminal Co. v. Interstate Commerce Commission,*

219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911).

## VI.

 There is no basis in this record justifying an award of punitive damages under *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). This conclusion assumes that such damages could not be awarded against a school corporation in the face of *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). This court has been able to locate four cases that have applied the *Newport* immunity to local school corporations. See *In re Bruce Selcraig*, 705 F.2d 789, 797 (5th Cir.1983); *Singh v. Superintending School Committee of the City of Portland et al*, 601 F.Supp. 865, 867 (D.Maine 1985); *Wells v. Dallas Independent School Dist.*, 576 F.Supp. 497, 509–10 (N.D.Tex.1983); and *Okeson v. Tolley School District No. 25*, 570 F.Supp. 408, 412 (D.N.D.1983). No cases contra have been located. There is simply here no showing of "reckless or callous indifference" as required in *Smith v. Wade* in this record.

## VII.

This court is not here and now called upon to decide whether or not the plaintiffs are prevailing parties sufficient to trigger an award of any counsel fees under Title 42 U.S.C. § 1988. If such a request is timely made under the provisions thereof and the case law interpreting the same, this court will deal with it in an appropriate manner and at an appropriate time.

Based on the record presently before the court it is this court's determination that costs which might be assessed under Title 28 U.S.C. § 1920 shall be borne by each party and no costs under that statute will be assessed. In sum, no damage or injunctive relief is here entered. It is declared that the instruction given is equivalent to that given in the public schools. The Clerk shall enter judgment accordingly in accordance with this memorandum and opinion. SO ORDERED.