920 F.Supp. 1208 (1996)
L.Q.A., By and Through his guardian, father and mother Leonard and Dorothy ARRINGTON, Plaintiffs,
v.
John A. EBERHART, et al., Defendants.
Civ. No. 94-D-1427-N.
United States District Court, M.D. Alabama, Northern Division.
February 21, 1996.
*1209 *1210 *1211 *1212 Will R. Kelly, Hayneville, AL, Leonard Q. Arrington, Deborah M. Nickson, Montgomery, AL, Thomas R. Fields, III, Hayneville, AL, for plaintiffs.
James R. Seale, Martha Ann Miller, Montgomery, AL, Clay R. Carr, Birmingham, AL, for defendants.

MEMORANDUM OPINION
DE MENT, District Judge.
Before the court is defendants Stan Cox, J.W.M. Covington, Bobbie Greenwood, Mary Hayes and Lois Johnson's motion for summary judgment filed on December 15, 1995. Also pending before the court is defendants John A. Eberhart, Montgomery County Board of Education, Henry A. Spears, Michael C. Dickey, H.W. Brendle, Herman L. *1213 Harris, John H. Winston, Jr., Margaret A. Carpenter and Tony Edwards' motion for summary judgment, filed on December 15, 1995, and defendants Willie Scott, Jr. and Marcus Davis' motion for summary judgment, filed on December 21, 1995. The plaintiff, L.Q.A., responded in opposition to said motions on January 19, 1996. Because the motions involve similar issues and arise from the same set of facts, the court will address them simultaneously. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motions are due to be granted.

JURISDICTION AND VENUE
The plaintiff alleges that the defendants abridged certain rights guaranteed by the United States Constitution; therefore, jurisdiction is proper under 28 U.S.C. § 1331.[1] The plaintiff also alleges violations of Alabama statutory and common law. These purported violations transpired during the same transaction and occurrence as the alleged constitutional deprivations; therefore, the court may assert supplemental jurisdiction over the plaintiff's state law claims. See 28 U.S.C. § 1367(a).[2] Personal jurisdiction of Defendants' person and venue are not contested.

SUMMARY JUDGMENT STANDARD
On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:
[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir.1989).
The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of `the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by *1214 the `depositions, answers to interrogatories, and admissions on file,' designate `specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; see also Fed.R.Civ.P. 56(e).
In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; see also Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11.

FINDINGS OF FACT
The minor plaintiff, L.Q.A., was a student at Georgia Washington Junior High School (hereafter Georgia Washington) in the Montgomery County Public School System. Defendant Bobbie Greenwood was the plaintiff's home economics teacher at Georgia Washington and is employed by the Montgomery County Board of Education. Defendant Stan Cox is the Principal of Georgia Washington and an employee of the Montgomery County Board of Education. Defendants J.W.M. Covington, Mary Hayes and Lois Johnson are employees of the Montgomery County Board of Education and were appointed by the superintendent of the Montgomery County Public Schools to serve as members of the hearing panel that considered the recommendation to expel the plaintiff from the Montgomery County Public School System. Defendant John A. Eberhart is superintendent of the Montgomery County Public Schools. Defendants Henry A. Spears, Michael C. Dickey, H.W. Brendle, Herman L. Harris, John H. Winston, Jr., Margaret A. Carpenter and Tony Edwards are members of the Montgomery County Board of Education.
On October 7, 1994, Ms. Greenwood received a report from a student in her class that the plaintiff had marijuana in his possession in Ms. Greenwood's class at Georgia Washington. Dep. of Greenwood at 47 & 53-54; Bd. of Educ. Hr'g Tr. at 16. Ms. Greenwood reported this allegation to the Sheriff's Deputy on duty at the school, Marcus Davis and the deputy notified the school principal, Mr. Cox. Dep. of Cox at 17-18. The plaintiff was escorted from the classroom to Mr. Cox's office by Deputy Davis. Dep. of L.Q.A. at 29-30.
After the plaintiff's removal from the classroom, Ms. Greenwood searched the area of the classroom where the plaintiff had been seated. Bd. of Educ. Hr'g Tr. at 58-61. Ms. Greenwood found a plastic bag containing a substance that she believed to be marijuana, a rolled cigarette and a book of cigarette papers in the sewing machine cabinet where the plaintiff was sitting. Id.; Dep. of Greenwood at 82-83. Ms. Greenwood gave these items to Deputy Davis, who in turn showed the items to Mr. Cox. Dep. of Greenwood at 85; Bd. of Educ. Hr'g Tr. at 60.
The plaintiff was informed of the accusation against him. Dep. of L.Q.A. at 30. In fact, Deputy Davis read the plaintiff his juvenile rights. Bd. of Educ. Hr'g Tr. at 107. The plaintiff declined to make any statement and requested that his parents be contacted. Id. His parents were notified and informed of the allegations against him, and his father came to the school campus. Id. His father checked him out of school and both father and son left the school campus. Dep. of L.Q.A. at 31.
That same day, after reviewing the information revealed during his investigation, Mr. Cox suspended the plaintiff for ten days. Pl.'s Compl. at ¶ 14; Bd. of Educ. Hr'g Tr. at 115. The plaintiff's parents were notified of his ten day suspension by a letter dated October 7, 1994. Pl.'s Ex. A attach. to Amend.Compl.; Bd. of Educ. Hr'g Tr. at 115; Ex. 7 attach. thereto. The letter also stated that the plaintiff's indefinite expulsion had been recommended and it listed the reasons for the recommendation. Id. Furthermore, the notice stated that an administrative hearing would be held concerning the proposed expulsion. Id. By letter dated October 13, 1994, the plaintiff's parents were notified that an expulsion hearing would be held on October *1215 20, 1994. Pl.'s Ex. B attach. to Amend. Compl.; Ex. 1 attach. to Dep. of Dorothy Arrington. This notice also itemized the reasons for the proposed expulsion. Id.
On October 20, 1994, Mr. Covington, Ms. Hayes and Mr. Johnson, as designees of the Montgomery County School Superintendent, held a hearing to consider whether the plaintiff should be expelled from the Montgomery County School System for an indefinite period. Pl.'s Compl at ¶ 16. During said hearing, one student appeared and testified that the plaintiff had shown her a bag of marijuana. In addition, signed statements from other students were read into the record, which stated that the plaintiff had shown these students a bag of marijuana. Pl.'s Compl. at ¶ 21. Because the students whose statements were read into the record were not present to testify in person, the plaintiff's attorney requested that the hearing be continued. Pl.'s Compl. at ¶ 29. Pursuant to that request, the hearing was continued until October 21, 1994. Pl.'s Compl. at ¶ 30. By letter dated October 20, 1994, the plaintiff's parents were notified of the continuation. This letter also advised them of the plaintiff's right to be represented by legal counsel and to present witnesses and evidence on his behalf.
Parents of the students who had given written statements refused Mr. Cox's request that the students be allowed to testify at the expulsion hearing. Bd. of Educ. Hr'g Tr. at 132. Because the student witnesses still were unavailable, the hearing was continued a second time until October 26, 1994. Pl.'s Compl. at ¶ 35.
Following the conclusion of the proceedings on October 26, 1994, and pursuant to the recommendation of the hearing panel, Mr. Eberhart, the school superintendent, expelled the plaintiff indefinitely from the Montgomery County School System. By letter dated October 26, 1994, the plaintiff's parents were notified of the decision and of their right to appeal. Pl.'s Amend.Compl. at ¶ 55.
The plaintiff appealed his expulsion to the Montgomery County Board of Education (hereafter "MCBOE"). Pl.'s Amend.Compl. at ¶ 66. On December 14, 1994, the MCBOE held a hearing to consider the plaintiff's expulsion. Pl.'s Amend.Compl. at ¶ 67. The plaintiff was present at the December 14, 1994, hearing with his father, who was also acting as his attorney. Bd. of Educ. Hr'g Tr. at 9. During the hearing, a fellow student testified that the plaintiff showed her a bag containing a green, leafy substance. Id. at 27. The student testified that she reported this incident to Ms. Greenwood and that she saw the plaintiff place the bag in his pants. Id. at 14-15. Ms. Greenwood testified that she found the bag containing a green, leafy substance, a rolled cigarette and a book of cigarette papers in a cabinet next to where the plaintiff had been sitting. Id. at 58-61. The student testifying at the hearing identified the bag as the one which she had been shown by the plaintiff. Id. at 60.
Lieutenant Willie Scott, Jr., Commander of the Montgomery County Sheriff's Office Juvenile Bureau, testified that he was called to Georgia Washington on October 7, 1994. Id. at 94-95. While at the school, he took possession and custody of a bag containing a green, leafy substance and a hand rolled cigarette that were reported to belong to the plaintiff. Id. at 95-96. The substance in the bag was later identified by the Alabama Department of Forensic Science to be one point eight grams of marijuana. Id. at 96. Further, the substance in the cigarette was identified as marijuana. Id. at 96. Following the hearing, the plaintiff was expelled from the Montgomery County School System for violating the Code of Good Student Behavior. Pl.'s Amend.Compl. at ¶ 76.
On November 3, 1994, the plaintiff filed a complaint against Mr. Eberhart, Ms. Hayes, Mr. Covington, Ms. Johnson, Mr. Cox, Deputy Davis and Ms. Greenwood. Prior to filing this case, the plaintiff did not submit any claim to the State Board of Adjustment or to any other governmental agency. Dep. of Dorothy Arrington at 145. The plaintiff alleges in Count I of the complaint that his due process rights were violated during the hearing conducted in October of 1994 concerning his expulsion from Georgia Washington. Count II alleges that Mr. Cox, Ms. Greenwood and Deputy Davis unlawfully deprived and/or conspired to deprive the plaintiff of *1216 his constitutional rights by way of false accusations, harassment, threats, intimidation, illegal search and illegal detention in violation of 42 U.S.C. §§ 1983 and 1985. Count III alleges a cause of action for slander against Mr. Cox. Count IV requests the court to enjoin the defendants from preventing the plaintiff from attending school.
On February 16, 1995, the plaintiff filed an amended complaint adding the MCBOE and members of the MCBOE. Count I of the amended complaint alleges violations by Mr. Cox, Ms. Hayes, Ms. Johnson, Ms. Greenwood, Deputy Davis and Mr. Eberhart of the plaintiff's due process rights with regard to events occurring prior to the hearing on December 14, 1994 before the MCBOE. Count II seems to allege violations of the plaintiff's due process rights during the December 14, 1994, hearing before the MCBOE. Count III seeks to enjoin the defendants from preventing the readmission of the plaintiff to the Montgomery Public School System. Count IV accuses Mr. Cox of retaliation and abuse of process. Count V alleges violations of the plaintiff's Fifth Amendment rights and racial discrimination in the enforcement of the Code of Good Student Behavior adopted by the MCBOE. Count V also alleges that the Code adopted by the MCBOE is unconstitutional because it does not provide a mechanism for readmission of students after expulsion and is vague and overly broad.

DISCUSSION

A. Due Process Claims

1. Procedural Due Process

The Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty or property without due process of law." U.S. Const.Amend. XIV, § 1. The doctrine of procedural due process arising from the Fourteenth Amendment requires courts to apply a two part analysis when considering allegations of a deprivation of "due process." First, the plaintiff must show that he or she has been deprived of a constitutionally protected interest through state action. Second, "a court must determine whether the procedural formalities of that deprivation comport with the requirements of the Due Process Clause." Craig v. Selma City School Bd., 801 F.Supp. 585, 589-90 (S.D.Ala.1992).
At the outset, the court finds that the plaintiff's suspension and expulsion from Georgia Washington deprived him of a constitutionally protected liberty and property interest as recognized in Goss v. Lopez, 419 U.S. 565, 577-78, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). Therefore, the issue before the court is whether the deprivations were accompanied by procedural safeguards sufficient to satisfy the Due Process Clause.

a. Suspension From School Temporarily
In Goss, the Supreme Court of the United States explained the due process to which students are entitled in short-term suspension proceedings:
Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of ten days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.
. . . . .
There need be no delay between the time "notice" is given and the time of the hearing. In the great majority of cases, the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.
419 U.S. at 581-82, 95 S.Ct. at 740. In addition, the Supreme Court recognized the impracticability of imposing strict procedural requirements upon school administrators for short-term disciplinary actions:
We stop short of construing the due process clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity *1217 to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident. Brief disciplinary suspensions are almost countless. To impose such case even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness.
Id. at 583, 95 S.Ct. at 740-41.
Here, Deputy Davis informed Mr. Cox in the plaintiff's presence that the plaintiff had been accused by another student of having marijuana. Dep. of L.Q.A. at 30. Consequently, the plaintiff was advised of the allegation against him and the basis for the allegation. Deputy Davis read the plaintiff his juvenile rights, and the plaintiff was also given an opportunity to make any statement that he wished to make in his own defense, but he declined that opportunity. Bd. of Educ. Hr'g Tr. at 107. Hence, not only did the plaintiff have notice of the charges against him, he was also afforded him an opportunity to present his version of the facts before he was suspended from school. See Lamb v. Panhandle Community Unit School Dist. No. 2, 826 F.2d 526, 529 (7th Cir.1987) (similar analysis). As a result, the court concludes that the defendants have complied with the due process requirements for short-term suspensions as set forth in Goss.

b. Expulsion of Plaintiff From School Indefinitely
The plaintiff also alleges that he was denied due process in the proceedings held to consider his indefinite expulsion from the Montgomery County Public School System. The court recognizes that higher standards of due process must be applied where a student is at risk of expulsion as opposed to a mere temporary suspension. Lamb, 826 F.2d at 528; Keough v. Tate County Bd. of Educ., 748 F.2d 1077, 1081 (5th Cir.1984). In light of this, the court is guided by the former Fifth Circuit's instructions set forth in Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961):
For the guidance of the parties in the event of further proceedings, we state our views on the nature of the notice and the hearing required by due process prior to expulsion from a state college or university. They should, we think, comply with the following standards. The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the board of education. The nature of the hearing should vary depending upon the circumstances of the particular case.
Id. at 158. Moreover, the court went on to state:
[A] hearing which gives the board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dressed judicial hearing with the right to cross-examine witnesses is required.
. . . . .
In the instant case, the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf.
. . . . .
If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled.
Id. at 159.
It is undisputed that the plaintiff's parents were given written notice of his ten-day suspension by a letter dated October 7, 1994. Pl.'s Ex. A attach. to Compl. The letter also stated that the plaintiff was being recommended for expulsion and listed the reasons for the recommendation as follows:

*1218 After a thorough investigation by the Montgomery County Sheriff's Department, [the plaintiff] was found to be in possession of a bag of what appeared to be marijuana, marijuana cigarette, a pack of cigarette rolling papers, and a cigarette lighter. Also revealed by the investigation is the fact that [the plaintiff] displayed said bag and/or cigarette to four Georgia Washington students.
Pl.'s Ex. A attach. to Amend.Compl. In addition, by a letter dated October 13, 1994, Mr. Covington notified the plaintiff's parents that the expulsion hearing would be held on October 20, 1994. Pl.'s Ex. B attach. to Amend.Compl. This letter also set forth the reasons for the proposed expulsion, stating: "Possession of a bag of marijuana, marijuana cigarettes, pack of rolling papers, and a cigarette lighter. [The plaintiff] displayed said bag and/or cigarette to four Georgia Washington students." Id.; Ex. 1 attach. to Dep. of Dorothy Arrington.
During the hearing held on October 20, 1994, one student appeared and testified that the plaintiff had shown her a bag of marijuana. Signed statements from other students stating that they had seen the plaintiff with marijuana were read into the record. Pl.'s Compl. at ¶ 21. Because these students were not present in person to testify, the plaintiff's father and attorney requested that the hearing be continued. Pl.'s Compl. at ¶ 29. In response to said request, the hearing was continued until October 21, 1994. Pl.'s Compl. at ¶ 30. The plaintiff's parents were given written notice of the continuation by letter dated October 20, 1994. This letter also advised them of the plaintiff's right to be represented by legal counsel and to present witnesses and evidence on his behalf. Ex. F attach. to Pl.'s Amend.Compl.
Mr. Cox requested that the students who had given statements against the plaintiff be present to testify at the expulsion hearing, but the parents of these students would not permit them to appear. Consequently, none of the students were available to testify at the October 21, 1994, hearing. Bd. of Educ. Hr'g Tr. at 132. As a result, the hearing was continued a second time until October 26, 1994, in an attempt to have additional students present to testify.
By letter dated October 21, 1994, the plaintiff's parents were advised that the hearing would resume on October 26, 1994. This letter again informed the plaintiff's parents of the plaintiff's right to be represented by legal counsel and to present witnesses and evidence on his behalf. Ex. G attach. to Pl.'s Amend.Compl. Board of Education representatives were unable to secure permission for the students to be present to testify at the October 26, 1994, hearing, and therefore, the hearing was concluded on that date without live testimony from the students who had given written statements.
The court finds that the aforementioned evidence reveals that the defendants complied with the notice requirements for procedural due process. The plaintiff and his parents were advised of the accusations against the plaintiff prior to the initial hearing and also prior to each continued session of the hearing. They were also advised on each occasion of their right to be represented by counsel and to present witnesses and evidence on the plaintiff's behalf. In fact, the plaintiff was represented by counsel at the hearing because his father, who also serves as his attorney in this action, was present during all suspension and expulsion proceedings. The plaintiff and his father also were advised of the names of witnesses against the plaintiff and the substance of the statements made by those witnesses. Finally, the plaintiff was given the opportunity to present a defense to the charges made against him, both before the three-member hearing panel, and before the MCBOE. In fact, before the MCBOE on December 14, 1994, extensive testimony was given concerning the circumstances herein, including the cross-examination of witnesses by the plaintiff. Moreover, the board members questioned witnesses themselves. Based on the foregoing facts, the court finds that the procedural requirements set forth in Dixon were satisfied.
The court also finds it noteworthy to address the plaintiff's allegation that he was deprived of due process because he did not receive adequate notice of the particular code violation or rule infraction that he had allegedly *1219 violated prior to the hearing before the MCBOE.[3] However, the Eleventh Circuit, in Nash v. Auburn University, 812 F.2d 655 (11th Cir.1987), has stated that "there are no hard and fast rules by which to measure meaningful notice." Id. at 661. With regard to the content of the notice, the court in Nash held that "there is no constitutional requirement that ... [students facing an expulsion hearing] must ... receive ... anymore in the way of notice than a statement of the charge against them." Id. at 663. In addition, the Supreme Court of the United States has stated that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); see also Nash, 812 F.2d at 660 (The process that is due is determined by a "flexible standard that depends on the practical requirements of the circumstances.").
Based on the forgoing authority, the court is convinced that the failure to designate a particular code violation by letter or number does not violate the plaintiff's due process, especially where, as in this case, the plaintiff and his parents were informed numerous times that his proposed expulsion was for possessing marijuana. In fact, the plaintiff was provided with a written statement of the charges against him on at least two occasions prior to the hearings concerning his expulsion. See Nash, supra. Hence, the court finds that the notice requirements set forth in Nash were also satisfied.

c. Cross-examination of Witnesses
The plaintiff alleges that he was denied the right to cross examine witnesses in violation of his right to procedural due process. However, the evidence reveals that the plaintiff's attorney cross-examined every witness who appeared and presented testimony to the MCBOE. Bd. of Educ. Hr'g Tr. at 24-40, 42-44, 49-53, 62-84, 92-94, 96-103 & 117-134. Therefore, the court finds that the plaintiff was afforded the opportunity and, in fact, exercised the opportunity to cross-examine witnesses.
The plaintiff also claims that he was denied due process during his expulsion proceedings because the hearing panel appointed by the school superintendent and the MCBOE considered written statements from student witnesses who were unavailable for cross-examination by the plaintiff. The Eleventh Circuit has refused to expand the requirement of cross-examination found in "quasi-judicial termination of welfare benefits ... [to] student disciplinary hearings." Nash, 812 F.2d at 664; see also Craig v. Selma City School Bd., 801 F.Supp. 585, 593 (S.D.Ala.1992) ("[T]he Eleventh Circuit has made clear that a student has no constitutional right to cross-examine witnesses at an expulsion hearing, ... so that a student clearly can have no federal right to obtain materials to prepare for cross-examination." (citation omitted)). The court in Nash emphasized that "[w]here basic fairness is preserved, we have not required the cross-examination of witnesses and a full adversary hearing." Id. at 664; see also Boykins v. Fairfield Bd. of Educ., 492 F.2d 697, 701 (5th Cir.1974) (held principal's testimony of reading statements made by teachers in the record did not violate due process). Thus, the admission of the statements of students who were not present at the hearing does not violate the requirements of procedural due process where there is no requirement for the cross-examination of those witnesses.
At the MCBOE hearing, all those directly involved with the recovery of the marijuana and other items on October 7, 1994, except the plaintiff and Deputy Davis, testified concerning the events which took place  i.e., Alecia Lockley, Ms. Greenwood, Lt. Scott and Mr. Cox. In fact, Ms. Lockley and Ms. Greenwood were the plaintiff's main accusers. In addition, said witnesses were cross-examined by the plaintiff and also questioned *1220 by the board members themselves. The board members did not have any knowledge about any information concerning the proposed expulsion prior to December 14, 1994. See Def.s' Ex. F-L (Affs. of Bd. Members). As such, the court is convinced and finds that the plaintiff did have "the opportunity to be heard at a meaningful time and in a meaningful manner," and that the procedures employed at the expulsion hearing afforded the plaintiff a full measure of due process of law. See Mathews, 424 U.S. at 333, 96 S.Ct. at 902.
In addition, in Brewer v. Austin Independent School District, 779 F.2d 260 (5th Cir. 1985), a teacher and assistant principal were informed by a student that the plaintiff student was selling drugs on the school campus. The plaintiff student was immediately suspended for three days, pending a hearing for permanent expulsion from school. At the expulsion proceedings, three written statements made by other students and accusing the plaintiff student of selling and smoking marijuana on the school campus were read to the plaintiff and the hearing officers. The students who had made these statements were not identified. The Fifth Circuit rejected the plaintiff's argument that "the campus review board should not have considered evidence that he had used and sold drugs at school without giving him the opportunity to confront and cross-examine the witnesses to these acts...." Id. at 263. The court did not believe that "the technicalities of criminal procedure ought to be transported into school suspension cases." Id. Specifically, the court stated:
The summary judgment evidence shows indisputably that summaries of statements from the three students describing specific incidents of [the plaintiff student's] use or sale of drugs on campus were read to him at his hearing. Each summary included the class in which the reported incident occurred; though none was specifically dated, each described events within the previous three months. Such a confrontation was more than sufficient to allow the evidence to be used in determining the length of [the plaintiff student's] suspension.
Id. The Sixth Circuit has also stated that a student threatened with expulsion based on the statements of other students did not have a due process right even to learn the identities of the accusing students. Newsome v. Batavia Local School Dist., 842 F.2d 920 (6th Cir.1988). In fact, the court determined that cross-examination may be ill-advised under certain circumstances. Id. at 924-25.
In the present case, the due process provided to the plaintiff was even greater than that reviewed and approved in Brewer and Newsome. Not only were the statements of other students provided to the plaintiff and his attorney,[4] but the names of the students who had made those statements were given to them as well. Even though the plaintiff knew each of these students, he apparently made no effort to have them present at the expulsion hearings for examination. Dep. of L.Q.A. at 44-45.
The court also notes that neither the appointed hearing panel nor the MCBOE have the authority to compel the attendance of witnesses at student disciplinary hearings. In fact, the plaintiff had an equal opportunity to have the student witnesses present to testify, and moreover, on several occasions, the plaintiff was advised of his right to call witnesses. Based on the foregoing, the court finds and concludes that the unavailability of witnesses for cross-examination by the plaintiff did not constitute a denial of due process.

d. Recusal of Herman Harris
The plaintiff also alleges he was deprived of due process due to the recusal of Herman Harris from deliberating on the plaintiff's expulsion. Pl.'s Amend.Compl. at ¶¶ 74-75. It is undisputed that Mr. Harris recused himself from deliberations of the MCBOE, Bd. of Educ. Hr'g Tr. at 136, due to a confrontation with the plaintiff's father prior *1221 to the December 14, 1994, hearing before the MCBOE.
However, the court finds that this recusal did not deprive the plaintiff of procedural due process. In fact, the recusal ensured that an impartial decision-maker would determine the issues before the MCBOE.[5] It is irrelevant that Mr. Harris sat through the hearing because he had no input in the decision-making process. See Nash v. Auburn University, 812 F.2d 655, 665 (11th Cir.1987) ("[A]n impartial decision-maker is an essential guarantee of due process."). Accordingly, the court finds that there was no deprivation of due process because Mr. Harris did not deliberate on the plaintiff's expulsion.

e. The October 26, 1994 Letter
The plaintiff also alleges that Mr. Eberhart made the decision to expel him prior to the conclusion of the hearing before Covington, Hayes and Johnson. In support thereof, the plaintiff makes certain allegations concerning a letter dated October 26, 1994, from Mr. Eberhart to Mr. and Mrs. Arrington. It is alleged that the letter could not have been written prior to 3:30 p.m. on October 26.[6] However, Dorothy Arrington, whom the plaintiff brings this action through, testified in her deposition that she had no evidence that the letter could not have been written prior to 3:30 p.m. Dep. of Dorothy Arrington at 158-60. In fact, Dorothy Arrington stated that she had no evidence to support this assertion other than the fact that the letter bears the same date as the date of the conclusion of the hearing, October 26, 1994. Dep. of Arrington at 163-64.
The court has reviewed the letter and notes that it is a standard-type letter with the address of the plaintiff's parents, description of the plaintiff and Mr. Eberhart's decision added in. In other words, the letter could have been written and typed in a couple of minutes. Most importantly, though, the plaintiff has come forward with no evidence to support this assertion, see Celotex, 477 U.S. at 322, 106 S.Ct. at 2552 ("the plain language of Rule 56(c) mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case"). Hence, the fact that the letter from Mr. Eberhart to the Arringtons concerning the plaintiff's expulsion was written on the same day as the conclusion of the hearing before Mr. Covington, Ms. Johnson and Ms. Hayes does not create a genuine issue of material fact as to whether the plaintiff was provided with procedural due process.
It is also alleged that the October 26 letter could not have been mailed prior to October 29. Specifically, the plaintiff alleges that Mr. Eberhart intentionally caused the October 26 letter not to be mailed or intentionally dated the letter on October 26, 1994, to deny the plaintiff the opportunity to appeal the expulsion decision to the MCBOE. However, Dorothy Arrington stated that she had no evidence to support this allegation other than the fact that she denied that she received the letter. Dep. of Dorothy Arrington at 162-63. The plaintiff also has come forward with no evidence to support this assertion. More importantly, the plaintiff appealed the expulsion decision to the MCBOE and was granted a hearing by the MCBOE even after the time for appeal had expired.
The court also finds it noteworthy to mention that the issue of the requirement of an *1222 independent determination of evidence on appeal of an expulsion was addressed in Brewer v. Austin Independent School Dist., 779 F.2d 260 (5th Cir.1985). The Brewer court held that due process "merely forbids the decision maker charged with holding the initial due process hearing from automatically accepting the punishment recommended by the student's accuser." Id. at 263-64. Here, it is undisputed that Mr. Covington, Ms. Hayes and Ms. Johnson made an independent, impartial decision concerning the proposed expulsion of the plaintiff. Based on the foregoing, the court finds that any allegations concerning violations of the plaintiff's procedural due process rights with regard to the October 26, 1994, letter are without merit.

f. Lack of Written Procedures for the Conducting of Expulsion Hearings
The plaintiff alleges that defendant Eberhart appointed Mr. Covington, Ms. Hayes and Ms. Johnson to hear charges against the plaintiff but failed to provide written guidelines, policy or procedures to ensure that the plaintiff was afforded due process. Pl.'s Amend.Compl. at ¶ 43. As determined by the court and obvious from the evidence, the plaintiff was afforded procedural and substantive due process during the October hearings before Mr. Covington, Ms. Hayes and Ms. Johnson. Therefore, the court finds that the plaintiff cannot allege any constitutional violation based solely on the absence of procedures or a policy to ensure due process when he was afforded all the process he was due.

g. Procedural Due Process Conclusion
For the foregoing reasons, the court concludes that the plaintiff was afforded an opportunity to be heard at a meaningful time and in a meaningful manner as required by the Procedural Due Process Clause of the Fourteenth Amendment. The procedures employed by all defendants were consistent with the requirements of procedural due process, and there is nothing to suggest that the hearings were not fundamentally fair. Accordingly, the court finds that all defendants are entitled to summary judgment as a matter of law on any claims asserted by the plaintiff concerning violations of his right to procedural due process.

2. Substantive Due Process

The plaintiff alleges that he was denied substantive due process due to a lack of substantial evidence presented against him which would have resulted in his expulsion from school. Pl.'s Amend. at ¶ 87. At the outset, the court recognizes that the right to public education "is not explicitly granted to American citizens by the language of the federal constitution and has never been recognized as `fundamental' by the Supreme Court." Craig, 801 F.Supp. at 595 (citing West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963)). Therefore, "state action infringing on a person's right to obtain a public education is not unconstitutional under a substantive due process analysis as long as that action is directed to a legitimate purpose and is rationally related to achieving that purpose." Id.
In considering a substantive due process claim in the context of a student expulsion, the Eleventh Circuit has stated that the Fourteenth Amendment provides not only procedural protection but also "provides a guarantee against arbitrary decisions that would impair [a student's] constitutionally protectable interests." Nash v. Auburn University, 812 F.2d 655, 667 (11th Cir.1987). The court in Nash further recognized that "`the governmental power to expel [students] ... is not unlimited and cannot be arbitrarily exercised. Admittedly, there must be some reasonable and constitutional ground for expulsion or the courts would have a duty to require reinstatement.'" Id. at 667 (quoting Dixon v. Alabama State Bd. of Educ., 294 F.2d 150, 157 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961)).
In Nash, the Eleventh Circuit affirmed the district court's finding that there was substantial evidence of the charges brought against the students, and thus, the university's action was neither arbitrary nor violative *1223 of their constitutional rights under the Fourteenth Amendment. Id. at 668. In this case, the defendants contend that there was substantial evidence presented to the MCBOE that the plaintiff possessed marijuana on the campus of Georgia Washington, and thus, the MCBOE's action was neither arbitrary nor violative of his constitutional rights under the Fourteenth Amendment.
At the MCBOE hearing, Alicia Lockley testified that she was shown a bag of green, leafy substance by the plaintiff, which the plaintiff identified as "weed" and "dope." Bd. of Educ. Hr'g Tr. at 14-15. She also testified that the plaintiff placed the bag inside his pants when she told him that she was reporting him to Ms. Greenwood. Id. Ms. Greenwood testified that during a search of the area where the plaintiff was sitting, she discovered a bag containing a green, leafy substance, a rolled cigarette and cigarette rolling papers. Id. at 58-60. Once found, these objects were turned over to the Montgomery County Sheriff's Department. Lt. Scott testified at the hearing that the substance in the plastic bag was identified by the Alabama Department of Forensic Science to be marijuana. Id. at 94-96. The plaintiff presented no evidence to the contrary.
Thus, even if the court excludes the statements made by other students which were admitted at the hearing, there was substantial evidence presented to the MCBOE that the plaintiff possessed marijuana on the day in question. Based on the foregoing evidence presented to the MCBOE during the December 14, 1994 hearing, the court finds that the MCBOE's decision to expel the plaintiff was not arbitrary and did not violate his constitutional rights under the Fourteenth Amendment. Accordingly, the court finds that Mr. Eberhart and the MCBOE are entitled to summary judgment as a matter of law on any claims asserted by the plaintiff concerning violations of his right to substantive due process under the Fourteenth Amendment.

B. Fifth Amendment

The plaintiff alleges in paragraphs 127 and 129 of his amended complaint that his rights under the Fifth Amendment were violated.[7] Specifically, he alleges that the Code of Good Student Behavior allowed Mr. Covington to require the plaintiff to testify during the first expulsion hearing. Not only does the Code not require the testimony of a student during any disciplinary action, but there is no evidence that the plaintiff testified during the first hearing. Moreover, during the hearing before the MCBOE, the plaintiff did not testify. The record clearly reflects that at the conclusion of the presentation by counsel for the superintendent, the plaintiff's father, who was acting as his attorney, thanked the MCBOE for its time. Bd. of Educ. Hr'g Tr. at 135. As such, the court finds that there is no genuine issue of material fact that the plaintiff's Fifth Amendment rights were violated at any time during the disciplinary proceedings.

C. Code of Good Student Behavior

The court will next address the plaintiff's contentions regarding the inadequacies of the Code of Good Student Behavior ("the Code").[8] The plaintiff first alleges that the Code allows for the selective enforcement of the rules and allows MCBOE employees to be arbitrary and capricious in rule enforcement or application. The plaintiff alleges that the Code allows unequal treatment of students and that the MCBOE employees are inconsistent in enforcement of the rules. The plaintiff further alleges that the defendants have intentionally used the Code to discriminate against black students. In response, the MCBOE members submit affidavits denying such allegations. Def.s' Ex. F-L attach. to Mot. for Summ.J.
*1224 The court notes that summary judgment must be entered against a party who fails to provide sufficient evidence in support of an essential element of that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Here, the plaintiff has presented no evidence that the Code allows for either selective or inconsistent enforcement. In fact, the plaintiff has not presented even a scintilla of evidence that the MCBOE members have used the Code to discriminate against black students or that the MCBOE members are inconsistent in enforcement of the rules. As such, the plaintiff's mere accusations cannot defeat a motion for summary judgment.
The plaintiff also alleges that the Code is vague, overbroad and does not define the term "possession" so that it can be understood by the students. Essentially, the plaintiff is contending that his suspension and thereafter expulsion violated due process because he had no way of knowing that the possession of marijuana in question would subject him to disciplinary sanctions.[9] The Supreme Court of the United States has recognized that:
maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship. Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.
Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 686, 106 S.Ct. 3159, 3166, 92 L.Ed.2d 549 (1986) (internal citations omitted); see also New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985) (reaffirming that the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings). The Supreme Court has also commented on the doctrines of overbreadth and vagueness as follows:
The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.
Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). Thus, the issue is whether the plaintiff was given fair warning that his alleged conduct was prohibited.
In light of the foregoing, the court finds that the MCBOE is not required to define "possession" with the exactness of a criminal statute. More importantly, the court finds that the Code gives fair warning that individuals who possess marijuana on school campuses may be suspended and thereafter expelled. Specifically, the plaintiff allegedly violated Rule C-8 of the Code of Good Student Behavior, which states in pertinent part:
Students shall not possess, use, sell, transmit, deliver or distribute marijuana, narcotics, stimulants, alcoholic beverages or any other controlled, unauthorized, or illegal substances or drug paraphernalia at any time....
See Ex. 2 attach. to Dep. of Arrington. A reasonable person could clearly deduct from this rule that holding marijuana, placing it in one's pants and placing it in a sewing machine cabinet at school would be a violation of the rule. In fact, the plain meaning of the word "possess" suggests such  to have as property; own. See The American Heritage Dictionary (2d ed. 1985).
The plaintiff also alleges that the Code fails to provide a procedure for the readmission of a student subsequent to expulsion. In the plaintiff's response to all the defendants' *1225 motions for summary judgment, the plaintiff also contends that he would be required to attend a drug rehabilitation program as a condition for readmission to the Montgomery Public School System.[10] In support thereof, the plaintiff cites pages 35 through 37 of Mr. Cox's deposition. After numerous readings of Mr. Cox's entire deposition, the court is unable to find any support for the plaintiffs' assertion that Mr. Cox said the plaintiff would be required to attend a drug rehabilitation program as a condition for readmission to the Montgomery Public School System.
In any event, the court finds that the Code does provide a procedure for the readmission of a student subsequent to expulsion. Specifically, page 28 of the Code states in pertinent part:
[t]he expelled student must apply to the Board of Education for reinstatement. The Board of Education may consider a written request for readmission to the school; such a request should be accompanied by evidence that the student has corrected inappropriate behaviors and established acceptable patterns of conduct.
Ex. 2 at 28 attach. to Dep. of Dorothy Arrington. As evident from the plain language of the above-quoted rule and after a careful reading of the entire Code, the court further finds that the Code does not state that a student must undergo drug rehabilitation prior to readmission. As such, the court finds that the plaintiff's argument that the MCBOE readmission procedure is discriminatory because it fails to provide a procedure for readmission and it requires participation in a drug rehabilitation program is wholly without merit. Based on the foregoing, the court concludes that there does not exist a genuine issue of material fact concerning the plaintiff's claims regarding the Code of Student Behavior.

D. 42 U.S.C. § 1983

The plaintiff alleges that the defendants violated 42 U.S.C. § 1983, which accords private citizens recourse in the wake of constitutional deprivations carried out by individuals acting under the color of state law.[11] Specifically, the plaintiff alleges violations of his rights under the Fourth, Fifth and Fourteenth Amendments as protected by 42 U.S.C. § 1983.

1. Deprivation of a Constitutional or Federal Right

At the outset, the court notes that a § 1983 claim is predicated on two indispensable elements:
first, the conduct complained of must have been committed by a person acting under state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.
Whitehorn v. Harrelson, 758 F.2d 1416, 1419 (11th Cir.1985) (citing Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). It is undisputed that the defendants were acting under color of state law at all material times. However, the plaintiff has not shown that he was deprived of any right protected by the Constitution. As discussed supra, there is no evidence that the plaintiff was deprived of his Fourteenth Amendment due process rights, Fourth Amendment rights or Fifth Amendment rights. Accordingly, in the absence of the deprivation of a constitutional or federal right, the plaintiff's § 1983 claim must fail.

2. Qualified Immunity

The defendants also argue that even if the plaintiff stated a claim upon which relief may be granted, they are entitled to qualified immunity which extinguishes liability for any and all claims in their individual capacity. The basis of the qualified immunity defense is firmly established:

*1226 When a plaintiff sues a municipal officer in the officer's individual capacity for alleged civil rights violations, the plaintiff seeks money damages directly from the individual officer. If sued "individually," a municipal officer may raise an affirmative defense of good faith, or "qualified," immunity.
Swint v. City of Wadley, 51 F.3d 988, 994 (11th Cir.1995) (quoting Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991)). The issue of whether defendants are entitled to qualified immunity may be properly determined on a pretrial motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.
For the plaintiff to defeat the defendants' motion for summary judgment based on qualified immunity, he must show that the defendants are not entitled to qualified immunity as a matter of law or that genuine issues of material fact exist so that the determination of whether the defendants are entitled to qualified immunity are only properly determined after findings of fact have been made by the jury. Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir.1988). However, even disputes over genuine issues of material fact will not "preclude summary judgment premised on a defendant's qualified immunity if the legal norms allegedly violated were not clearly established at the time of the challenged actions." Id. at 1564.
Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional rights. Courson v. McMillian, 939 F.2d 1479, 1486 (11th Cir.1991). Moreover, "qualified immunity seeks to protect government officials from the cost of trial and the burdens of broad reaching discovery." Caraballo-Sandoval v. Honsted, 35 F.3d 521, 524 (11th Cir.1994) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396 (1982)); see also Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1184 (11th Cir.1994) (citing Lassiter v. Alabama A & M University, 28 F.3d 1146, 1149 (11th Cir.1994) ("... qualified immunity protects government officials performing discretionary functions from litigation, including discovery and trial")).
The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Rich, 841 F.2d at 1563 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); see also Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir.1991). According to the Court in Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341, 106 S.Ct. at 1096; see also Swint v. Chambers County Comm'n, ___ U.S. ___, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); Hurst v. Finley, No. 94-6549, 63 F.3d 1112 (11th Cir. filed Aug. 3, 1995).
The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity is as follows:
1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law" [or a federal statute].
Rich, 841 F.2d at 1563-64 (quoting Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir.1983) (brackets added)).
Since the advent of the Zeigler analysis, it is unclear how a court is to determine whether a government official was acting within his or her discretionary authority when the allegedly illegal or unconstitutional conduct occurred. Id. at 1564. However, the court in Rich relied on a pre-Harlow case to hold that "[a] government official meets his burden of *1227 proof by showing `objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" Id. (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir.1981)).
Once a defendant proves that he or she was acting within the scope of his or her discretionary authority, the burden of proof shifts to the plaintiff. The plaintiff's prong of the two part test can be divided into two subparts. First, a plaintiff must prove that the law at the time of the acts was clearly established. Courson v. McMillian, 939 F.2d 1479, 1487-88 (11th Cir.1991). Secondly, the plaintiff must show a genuine issue of material fact concerning the defendant's conduct in violation of clearly established law. Courson, 939 F.2d at 1488.
In order to determine whether a law was clearly established, the right must be so specific that "`in the light of preexisting law the unlawfulness must be apparent.'" Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir.1994) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Thus, the court in its analysis may not consider developments in the law, which occur after a defendant's alleged unlawful conduct. Furthermore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (emphasis added). However, "`[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful....'" Swint v. City of Wadley, 51 F.3d 988, 995 (11th Cir.1995) (quoting Anderson, 483 U.S. at 640, 107 S.Ct. at 3039). "The court must be convinced of the existence of a clear, factually-defined, well-recognized right of which a reasonable [government official] should have known." Dartland v. Metropolitan Dade County, 866 F.2d 1321, 1323 (11th Cir.1989).
The Hansen case has emphasized that the qualified immunity analysis is factspecific:
"When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. [Citation omitted]. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases."
Hansen, 19 F.3d at 575 (quoting Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1575 (11th Cir.1992), approved en banc, 998 F.2d 923 (11th Cir.1993)). In other words, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir.1994) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993), modified, 14 F.3d 583 (11th Cir.1994)). The plaintiff cannot rely on "general conclusory allegations" or "broad legal truisms." City of Fort Lauderdale, 7 F.3d at 1557 (quoting Barts v. Joyner, 865 F.2d 1187, 1190 (11th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989)); see also Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1574-75 (11th Cir.1992) (Edmondson, J., dissenting), approved en banc, 998 F.2d 923 (11th Cir.1993); Muhammad v. Wainwright, 839 F.2d 1422, 1424 (11th Cir.1987). Further, whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and the state's highest court. See D'Aguanno v. Gallagher, 50 F.3d 877, 881 n. 6 (11th Cir.1995); Courson v. McMillian, 939 F.2d 1479, 1498, n. 32 (11th Cir.1991).
The evidence is undisputed that the defendants were performing discretionary functions. Therefore, the court finds that the defendants have met their burden of proving that each of them was acting within his official capacity during the conduct in question. The first step of the Zeigler paradigm having been completed, the burden of proof now shifts to the plaintiff.
As to the second prong of the Zeigler test, i.e., that the defendants' conduct *1228 violated a clearly established constitutional law, the court must look to "whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Hurst v. Finley, No. 94-6549, 63 F.3d 1112 (11th Cir. filed Aug. 3, 1995) (quoting Swint v. Chambers County Comm'n, ___ U.S. ___, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (citation and quotation marks omitted)). In this case, the plaintiff does not cite and the court cannot find any case that clearly establishes the precise procedures which should be done before, during or after a student is expelled from school. In addition, the plaintiff does not cite and the court cannot find any case that clearly establishes the following:
a. The right not to be suspended or expelled from school where school officials had probable cause to believe that the plaintiff was in possession of marijuana on school premises;
b. The right not to have school officials objectively gather information regarding accusations against the plaintiff or to provide that information to other school officials who were to determine the appropriate discipline for the plaintiff;
c. The right not to be accused of violating school rules despite school officials' probable cause to believe that the plaintiff had in fact violated school rules;
d. The right not to be asked to display voluntarily the contents of the plaintiff's pant pockets;
e. The right to have the board of education compel witnesses to be present for the plaintiff to cross-examine at the expulsion hearing held by the board of education; and
f. The right to preclude the expulsion hearing panel from considering written statements of other students regarding the accusations made against the plaintiff.
The court emphasizes that the plaintiff cannot rely on "general conclusory allegations" or "broad legal truisms" to show that the law is clearly established for purposes of defeating a claim for qualified immunity. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993). Therefore, when the defendants acted, they could not have known for certain whether their acts were unlawful, and thus, alternatively, the court finds that the defendants are entitled to qualified immunity.

E. 42 U.S.C. §§ 1985 and 1986

The court will next address the substance of the plaintiff's claims under 42 U.S.C. § 1985(3), which addresses conspiracies committed by private actors. The plaintiff alleges a conspiracy between Ms. Greenwood and Mr. Cox to provide false testimony and documentation against the plaintiff. Pl.'s Compl. at ¶¶ 1 & 40. The plaintiff also alleges a conspiracy between the MCBOE employees and officers of the Montgomery County Sheriff's Department to deprive the plaintiff of his constitutional rights. Pl.'s Compl. at ¶¶ 13, 40 & 43. Although § 1985 has several intricate subdivisions,[12] the court will only consider subsection (3), which is relevant to this case. The Eleventh Circuit has summarized the basic elements of § 1985(3) as follows:
"(1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 ... (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 829, 103 S.Ct. at 3356 [(quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971))]. *1229 Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 627 (11th Cir.1992); see also Saville v. Houston County Healthcare Auth., 852 F.Supp. 1512, 1537 (M.D.Ala.1994).
As the above quote underscores, the Supreme Court of the United States, in analyzing the predominate purpose of the civil rights conspiracy statute, has viewed § 1985(3) in a narrow sense. United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Specifically, the Court has stated that lacking other evidence of congressional intention, it would withhold judgment on the question "whether § 1985(3), as enacted, went any farther than its central concern  combating the violent and other efforts of the [Ku Klux] Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." Id. at 837, 103 S.Ct. at 3360. Essentially, the Court hints that the section's main focus is on racial discrimination.
At the outset, the court notes that the plaintiff has not only failed to present any evidence of a racial or class based "individual discriminatory animus behind the conspirator's actions," but the plaintiff has even failed to allege such. See Lucero v. Operation Rescue of Birmingham, 954 F.2d 624, 627-28 (11th Cir.1992). As such, the plaintiff has failed to identify "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the defendants' actions, as required under Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). See Lucero, 954 F.2d at 627 (plaintiffs similarly failed to establish a claim under § 1985(3)). Accordingly, the court finds that the plaintiff has failed to state a § 1985 claim.
In addition, the plaintiff's allegations are not supported by any reference to documentary evidence before the court. In fact, the allegation of a theory of conspiracy against Mr. Eberhart and the MCBOE is alleged for the first time in the plaintiff's response to the motions for summary judgment. See Pl.'s Resp. to Def.s' Mot. for Summ. J. at ¶ 18 & Pl.'s Resp. to All Def.s' Mot. for Summ. J. at ¶ 21. "The Plaintiff [can] not rest on his allegations of a conspiracy to get to a jury without any significant probative evidence tending to support the complaint." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Hence, since the plaintiff has failed to proffer any "significant probative evidence" tending to support his conspiracy claims, the court finds that the defendants are entitled to summary judgment on the § 1985 claims.
In addition, § 1985 creates no substantive rights, but prohibits conspiracy to deprive a person of rights created elsewhere. United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); Stevens v. Tillman, 855 F.2d 394, 404 (7th Cir.1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). Here, the plaintiff seems to be alleging that the conspiracies deprived him of due process. However, as discussed supra, the plaintiff was afforded due process both prior to his temporary suspension from Georgia Washington and prior to his expulsion from the Montgomery County Public School System. As such, there can be no conspiracy where there is no underlying wrongful act. Accordingly, because the plaintiff has not presented substantial evidence that he was denied due process, the court finds that the § 1985 claims must fail due to the absence of an underlying wrongful act.
Notwithstanding the foregoing, to the extent that the plaintiff alleges a conspiracy between the MCBOE and its employees, the court finds that such claim is not cognizable. Specifically, the court finds that a school board and its employees constitute one entity incapable of forming the alleged conspiracy. See Moody v. Jefferson Parish Sch. Bd., 803 F.Supp. 1158, 1166 (E.D.La. 1992), aff'd, 2 F.3d 604 (5th Cir.1993) ("Because all of [the] individuals sued are employed by the [school board], ... as a matter of law, they constitute a single entity incapable of forming the alleged conspiracy."); see also Hilliard v. Ferguson, 30 F.3d 649 (5th Cir.1994) (holding that a school board and its employees constituted one entity); Hull v. Cuyahoga Valley Joint Vocational School Dist., 926 F.2d 505 (6th Cir.), cert. denied, *1230 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991) (Since school board employees were members of the same collective entity, the alleged conspiracy did not involve two or more people.). Based on the foregoing, the court concludes that the defendants' motions for summary judgment concerning the § 1985 claims are due to be granted.
The court also finds that the plaintiff has failed to establish a 42 U.S.C. § 1986 cause of action in either the original complaint or the amended complaint. In fact, § 1986 is only mentioned once in the jurisdictional allegations contained in paragraph one of the original complaint. Moreover, a claim can be stated under § 1986 only if the plaintiff states a valid claim under § 1985.[13] Accordingly, the defendants' motions for summary judgment concerning 42 U.S.C. § 1986 are due to be granted.

F. Slander

The plaintiff alleges that Mr. Cox made slanderous statements concerning the circumstances on October 7. Pl.'s Compl. at ¶¶ 47-50. Specifically, the plaintiff asserts that Mr. Cox slandered the plaintiff by publishing false and defamatory statements in advising the instructors and the students at Georgia Washington that marijuana was found in the desk of the plaintiff and in making a statement to Lt. Scott that there were cigarette rolling papers in the pockets of the plaintiff. The plaintiff contends that Mr. Cox published these statements with malice and with knowledge of its falsity or with gross and reckless disregard of its falsity.
A plaintiff may establish a prima facie case of defamation by proving the following:
1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting to at least negligence; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication of the statement.
Ledbetter v. United Ins. Co. of America, 837 F.Supp. 381, 387 (M.D.Ala.1993), aff'd, 59 F.3d 1247 (11th Cir.1995) (quoting McCaig v. Talladega Publishing Co., 544 So.2d 875, 877 (Ala.1989)); see also Drill Parts and Serv. Co. v. Joy Mfg. Co., 619 So.2d 1280, 1289 (Ala.1993) (quoting same case). In addition, "[a]n action for defamation will lie only if the communication is made to a third party." Ledbetter, 837 F.Supp. at 387 (citing Rowe v. Isbell, 599 So.2d 35, 36 (Ala.1992)). Moreover, the "statement made to a third party must not be privileged." Id.
Here, Mr. Cox alleges that his communications were made in the course of quasi-judicial proceedings, and thus, they are protected by an absolute privilege. However, the court believes that Mr. Cox has misinterpreted the Slander Count. Specifically, the complaint alleges that the alleged slanderous statements were made on October 7, 1994 to the instructors and students at Georgia Washington and Lt. Scott. Although, the plaintiff was given an opportunity to respond to the charges, a quasi-judicial hearing clearly was not held on October 7, 1994. In fact, the first hearing on the matter was not held until October 20, 1994.[14]
However, the court finds that the plaintiff has failed to show sufficient evidence of one of the elements needed to establish a prima facie case of defamation. Namely, the plaintiff has failed to show that the communications were not privileged as a matter of law, and moreover, the plaintiff has failed to meet the higher burden of proof required when a communication is privileged.
"The question of whether an utterance was privileged is a matter of law to be determined by the court." Mead Corp. v. Hicks, 448 So.2d 308, 312 (Ala.1983) (citing Fulton v. Advertiser Co., 388 So.2d 533, 537 (Ala.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981)); see also *1231 Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala.1976). In Mead, the court succinctly summarized the test for determining whether a privilege exists as follows:
"`Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken.'"
Id. at 312-13 (quoting Fulton, 388 So.2d at 537); see also Willis, supra; Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290 (1923).
Here, it is undisputed that the statements made to the instructors and students at Georgia Washington were made in the course of Mr. Cox's investigation of illegal drug possession at the school. Mr. Cox, as principal, clearly has a duty owed to the public and to the students of Georgia Washington to keep the school drug free. In addition, Mr. Cox is obligated, as are all citizens, to report alleged illegal conduct to the appropriate authorities  in this case, Lt. Scott.[15] In fact, if Mr. Cox has acted otherwise he would have violated the law. Hence, the court finds that Mr. Cox's statements were protected by a qualified privilege.
"Statements subject to a qualified privilege are not actionable unless the plaintiff can prove malice on the part of the defendant." Hicks, 448 So.2d at 313. In elaborating on this burden, the Supreme Court of Alabama has stated:
[T]he standard of proof with regard to an allegedly defamatory statement as to private figures is as follows: The plaintiff must prove by a preponderance of the evidence that the defendant was negligent in making the statement. The negligence requirement is the minimal threshold of "fault" allowed under the rule established in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). If, however, the communications were protected by a qualified privilege, the plaintiff's burden of proof is higher. He must prove "common law malice" in its traditional sense.
Id. (citing Fulton, 388 So.2d at 538). Common law malice "`may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like ... or by the violence of the defendant's language, the mode and extent of publication and the like.'" Fulton, 388 So.2d at 538 (quoting Kenney v. Gurley, 208 Ala. 623, 95 So. 34 (1923)). Here, the plaintiff has proffered no evidence whatsoever which would tend to show common law malice on the part of Mr. Cox. As such, the court finds that Mr. Cox is entitled to summary judgment on the plaintiff's slander count. See Montgomery v. Big B, Inc., 460 So.2d 1286 (Ala.1984) (similar analysis and result).

G. Retaliatory Prosecution

The plaintiff alleges that Mr. Cox maliciously and without probable cause attained a warrant for the plaintiff's arrest on the charge of possession of marijuana. Pl.'s Amend.Compl. at ¶ 117. Mr. Cox contends that school officials are entitled to immunity for actions taken to enforce state laws, and therefore Mr. Cox is entitled to summary judgment on this claim.
On July 31, 1995, the Alabama Legislature passed Act 95-539. Section 4 of that Act provides:
A teacher or administrator who, in good faith, reports suspected drug abuse by a student to the appropriate authorities shall be immune from civil or criminal liability.
H.B. 470, Act 950539, 1995 Reg.Sess., Ala. Sess.Laws 1995. Here, the plaintiff's suspected drug possession was reported to the Montgomery County Juvenile authorities in *1232 October of 1994, which is before the Act was passed. However, the Act specifically provides that teachers and administrators are immune from civil or criminal liability. Therefore, because the Act was passed prior to any determination of liability in this case, it is applicable to this proceeding and Mr. Cox is now protected from liability if he reported the suspected drug possession in good faith.
The court finds that no reasonable jury could find that Mr. Cox did not act in good faith in reporting the suspected drug possession to the appropriate authorities. For instance, the undisputed facts reveal that Ms. Greenwood was informed by a student that the plaintiff was in possession of marijuana. Ms. Greenwood reported that information to Mr. Cox and to Deputy Davis, the sheriffs deputy assigned to the school. Mr. Cox immediately thereafter took steps to identify other students who had knowledge concerning the accusation against the plaintiff and he interviewed those students to verify the initial accusation. Mr. Cox immediately notified law enforcement authorities and turned the matter over to the Montgomery County Sheriff's Department, Juvenile Division. Mr. Cox did not sign a complaint against the plaintiff until the substance found in the plaintiff's desk had been tested by the Alabama Department of Forensic Sciences and conclusively determined to be marijuana. Even then, Mr. Cox signed the juvenile complaint at the request of the Montgomery County Sheriff's Department, Juvenile Division. The court finds that Mr. Cox's actions clearly cannot be characterized as malicious or retaliatory, but were simply the good faith performance of his responsibilities.[16] As such, Mr. Cox is entitled to immunity for his actions taken to enforce state law. See Mazanec v. North Judson-San Pierre School Corp., 614 F.Supp. 1152, 1158 (N.D.Ind.1985), aff'd, 798 F.2d 230 (7th Cir.1986) (similar finding).
The court finds it noteworthy to mention that Mr. Cox merely conveyed to the Montgomery County juvenile authorities the information that was available to him regarding the accusations made against the plaintiff. Thereafter, Mr. Cox had no control over the criminal prosecution nor any authority to continue or dismiss the charges. Those decisions were solely within the authority of the prosecuting attorney. As such, Mr. Cox cannot be held responsible in damages for what happened in the course of and as a result of the criminal prosecution. See Mazanec, 614 F.Supp. at 1158 (similar finding). Based on the foregoing, the court finds that Mr. Cox is entitled to summary judgment on the plaintiff's retaliatory prosecution claim.

H. Malicious Prosecution

In his amended complaint, the plaintiff states a claim against Mr. Cox for malicious prosecution. Pl.'s Amend.Compl. at ¶¶ 78, 79 & 80. However, Mr. Cox contends that summary judgment should be granted in his favor because he acted solely out of his professional interests in preserving a drug-free school environment. Mr. Cox also contends that the plaintiff has offered no substantial evidence of a malicious purpose nor of the other elements of malicious prosecution.
The Supreme Court of Alabama has stated the following concerning a malicious prosecution claim:
To successfully maintain an action for malicious prosecution in Alabama, the plaintiff has the burden of proving that a prior judicial proceeding was instigated by the defendant without probable cause and with malice, such a proceeding ending in favor of the plaintiff but nevertheless causing the plaintiff damages. All of these elements being essential, the plaintiff must prove them in order to prevail because an action for malicious prosecution is not favored at law.
Alabama Power Co. v. Neighbors, 402 So.2d 958, 962 (Ala.1981) (emphasis supplied) (internal citations omitted). In Ennis v. Beason, 537 So.2d 17 (Ala.1988), the Court held that a plaintiff cannot recover in a malicious prosecution action against a school principal where the evidence shows that the principal acted out of his interest as a school official in *1233 enforcing a school disciplinary order and not out of malice. Id. at 20.
Here, the court finds that Mr. Cox clearly had probable cause to notify law enforcement authorities based on the statements given to him by Ms. Greenwood and other students. The plaintiff has presented no evidence that Mr. Cox or Ms. Greenwood were motivated by a malicious purpose. In fact, the evidence in this case shows that Ms. Greenwood and Mr. Cox acted solely out of their professional interests in preserving a drug-free school environment. Moreover, the juvenile criminal proceedings initiated against the plaintiff were not terminated in his favor. As the foregoing demonstrates, the plaintiff has failed to offer evidence of the essential elements of malicious prosecution. "If the plaintiff fails to prove any one of the necessary elements, then the defendant is entitled to a judgment as a matter of law." Neighbors, 402 So.2d at 967. In fact, this claim, the same as the earlier claims noted by the court, is patently frivolous. Accordingly, the court finds that Mr. Cox is entitled to summary judgment on the plaintiff's claim for malicious prosecution.

CONCLUSION
For the foregoing reasons, the court finds that defendants Stan Cox, J.W.M. Covington, Bobbie Greenwood, Mary Hayes and Lois Johnson's motion for summary judgment is due to be granted. The court further finds that defendants John A. Eberhart, Montgomery County Board of Education, Henry A. Spears, Michael C. Dickey, H.W. Brendle, Herman L. Harris, John H. Winston, Jr., Margaret A. Carpenter and Tony Edwards' motion for summary judgment is due to be granted. Also, the court finds that defendants Willie Scott, Jr. and Marcus Davis' motion for summary judgment is due to be granted. The court will entertain a timely filed motion for attorney's fees as provided in 42 U.S.C. § 1988, if the defendants desire to file the same. A judgment in accordance with this memorandum opinion will be entered separately.
NOTES
[1] Section 1331 provides, "[t]he federal district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.
[2] Pursuant to § 1367,

"... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."
28 U.S.C. § 1367(a).
[3] The plaintiff allegedly violated Rule C-8 of the Code of Good Student Behavior, which states in pertinent part:

Students shall not possess, use, sell, transmit, deliver or distribute marijuana, narcotics, stimulants, alcoholic beverages or any other controlled, unauthorized, or illegal substances or drug paraphernalia at any time....
See Ex. 2 attach. to Dep. of Arrington.
[4] The court notes that Craig, supra, implies that where a student has equal access to, and equal ability to identify witnesses against him, there is no denial of due process if school authorities fail to provide the accused student with copies of statements made against him or the identities of those who made the statements.
[5] In making this determination, the court finds that the MCBOE members were impartial in their consideration of the facts placed before them during the expulsion hearing. They were not provided with any information concerning the proposed expulsion prior to the December 14, 1995, hearing. Def.s' Ex. F-L (Affs. of Bd. Members). In fact, the MCBOE members had no knowledge of the nature of the charges against the plaintiff prior to the hearing. Id. Further, the MCBOE members had no knowledge of the identity of any witnesses who would be testifying prior to the December 14th hearing. Id. It is undisputed that the decision to accept the recommendation of the superintendent to expel the plaintiff was based solely on the evidence presented during the hearing and the court so finds. See id.
[6] The court assumes that the plaintiff is implying that the letter could not have been written so quickly unless the decision to expel had been made prior to the termination of the hearing.
[7] The court assumes that the plaintiff is referring to the phrase that no person "shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V.
[8] The MCBOE adopts disciplinary policies contained in the Code pursuant to Alabama Act 95-121, formerly Ala.Code § 16-8-10, which provides in pertinent part:

The local board of education shall, upon the written recommendation of the chief executive officer, determine and establish a written educational policy for the board of education and its employees and shall prescribe rules and regulations for the conduct and management of the schools....
[9] The court finds this allegation to be frivolous. There is no school in the United States where possessing illegal drugs is not a serious infraction of the rules. Moreover, the court doubts there is any schoolchild in the plaintiff's grade who is unaware of the fact that possessing marijuana, a Schedule I Controlled Substance for which one may be sentenced to the penitentiary, is misconduct.
[10] The court also finds that this allegation is frivolous.
[11] Section 1983 provides in relevant part that:

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured...."
42 U.S.C. § 1983.
[12] See Kush v. Rutledge, 460 U.S. 719, 724-25, 103 S.Ct. 1483, 1486-87, 75 L.Ed.2d 413 (1983) (parsing subdivisions of § 1985).
[13] "Section 1986 is designed to punish those who aid and abet violations of § 1985." Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc., 32 F.3d 989, 994 (6th Cir.1994) (quoting Browder v. Tipton, 630 F.2d 1149, 1155 (6th Cir.1980)).
[14] The court notes that statements made in the subsequent hearings were made in the course of quasi-judicial proceedings and thus are absolutely privileged.
[15] The court also notes that Mr. Cox's communications to Lt. Scott are protected by § 4 of Act 95-539 passed by the Alabama Legislature on July 31, 1995. See infra discussion.
[16] The court also notes that the transcript and records of the plaintiff's juvenile proceeding, submitted by the defendants, set forth undisputed facts which establish that Mr. Cox had probable cause for notifying law enforcement authorities.